1   Douglas E. Dexter, SBN 115868
     FARELLA BRAUN + MARTEL LLP
2   235 Montgomery Street, 17th Floor
     San Francisco, CA 94104
3   Telephone: (415) 954-4400
     Facsimile: (415) 954-4480
4   E-mail: ddexter@fbm.com

5   Mark A. Knueve (OB No. 0067074) Admitted Pro Hac Vice
     Daniel J. Clark (OB No. 0075125) Admitted Pro Hac Vice
6   Samantha A. Stilp (OB No. 0086907) Admitted Pro Hac Vice
     VORYS, SATER, SEYMOUR AND PEASE LLP
7   52 East Gay Street
     P.O. Box 1008
8   Columbus, Ohio 43216-1008
     Telephone: (614) 464-6387
9   Facsimile: (614) 719-4808
     E-mail: maknueve@vorys.com
10   E-mail: djclark@vorys.com
     E-mail: sastilp@vorys.com
11   Attorneys for Defendant
     ABERCROMBIE & FITCH STORES, INC.
12   dba ABERCROMBIE KIDS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | Case No. 5:10-cv-03911-EJD |
|      Plaintiff, | |
|      vs. | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION** |
| ABERCROMBIE & FITCH STORES, INC. dba ABERCROMBIE KIDS, | |
|      Defendant. | Date: September 28, 2012 Time: 9:00 a.m. District Judge Edward J. Davila Courtroom: 4 |

PLEASE TAKE NOTICE that on September 28, 2012, at 9:00 a.m., or as soon thereafter

as the matter may be heard in the Courtroom of the Honorable Edward J. Davila, located at 280

South 1st Street, San Jose, California 95113, Defendant Abercrombie & Fitch Stores, Inc. moves

for an order granting summary judgment in favor of the Defendant.

This motion is based upon this Notice of Motion and Memorandum in Support; the depositions of Halla Banafa, Ahmed Banafa, Janet Canasa, Deon Riley, Adil Muschelewicz, and Kathleen Lundquist; the declarations of Samantha A. Stilp and Janet Canasa and the exhibits attached thereto; the other records, pleadings, and papers filed in this action; any matters of which the Court may or must take judicial notice; and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this motion.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Abercrombie & Fitch Stores, Inc. hereby respectfully moves this Court to enter summary judgment in its favor and against Plaintiff Equal Employment Opportunity Commission on the grounds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.  In the alternative, Defendant respectfully requests that this Court enter summary adjudication in its favor on the Plaintiff's claims for injunctive relief and punitive damages.  A Memorandum in Support of this Motion is attached hereto.

Dated:   August 13, 2012                    Respectfully submitted,

                                            /s/Mark A. Knueve
                                            Mark A. Knueve (Ohio Bar No. 0067074)
                                            Daniel J. Clark (Ohio Bar No. 0075125)
                                            Samantha A. Stilp (Ohio Bar No. 0086907)
                                            VORYS, SATER, SEYMOUR AND PEASE LLP
                                            52 East Gay Street
                                            P.O. Box 1008
                                            Columbus, Ohio 43216-1008
                                            Telephone: (614) 464-6387
                                            Facsimile: (614) 719-4808
                                            E-mail: maknueve@vorys.com
                                            E-mail: djclark@vorys.com
                                            E-mail: sastilp@vorys.com

                                            *Admitted pro hac vice*

Douglas E. Dexter, SBN 115868
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
E-mail: ddexter@fbm.com

Attorneys for Defendant
ABERCROMBIE & FITCH STORES, INC.
d/b/a ABERCROMBIE KIDS

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ............................................................................................. 7

II.    STATEMENT OF FACTS .............................................................................. 8

    A.    Abercrombie & Fitch ............................................................................. 8

    B.    Abercrombie's Interview Procedure ..................................................... 10

    C.    Complainant Halla Banafa ................................................................... 11

    D.    Banafa Stops Wearing Her Hijab Altogether ...................................... 14

III.    STANDARD OF REVIEW .......................................................................... 14

IV.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF
ABERCROMBIE ON THE EEOC'S RELIGIOUS DISCRIMINATION CLAIM
BECAUSE THE EEOC CANNOT ESTABLISH A DISPARATE TREATMENT
OR FAILURE TO ACCOMMODATE CASE ............................................... 15

    A.    The EEOC Cannot Establish a Disparate Treatment Claim................... 15

        i.    The EEOC Cannot Establish a Prima Facie Case Because Plaintiff
Was Not Treated Differently Than Similarly Situated Employees........... 16

        ii.    Abercrombie has Articulated a Legitimate, Nondiscriminatory
Reason for not Hiring Banafa ...................................................... 16

        iii.    The EEOC Cannot Show Pretext ............................................. 17

V.    THE EEOC CANNOT ESTABLISH A FAILURE TO ACCOMMODATE
CLAIM......................................................................................................... 19

VI.    SUMMARY JUDGMENT SHOULD BE ENTERED FOR ABERCROMBIE ON
THE EEOC'S CLAIMS FOR INJUNCTIVE RELIEF .................................... 21

    A.    The Court Should Deny the EEOC's Request for Injunctive Relief Because
the EEOC Cannot Meet Its Burden of Proving a Cognizable Danger of
Recurrent Violations. ...................................................................... 22

    B.    The EEOC's Requested Injunctive Relief Is Impermissibly Overbroad and
Inapplicable to the Facts of This Case ................................................ 24

VII.    ABERCROMBIE IS ENTITLED TO SUMMARY JUDGMENT ON THE
EEOC'S CLAIM FOR PUNITIVE DAMAGES ................................................ 26

VIII.    CONCLUSION .......................................................................................... 28

CERTIFICATE OF SERVICE ................................................................................. 29

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997).......................................................................22

Anderson v. Liberty Lobby, Inc., 477 U.S. 242,  106 S. Ct. 2505, 91 L. Ed. 2d 202
    (1986) ........................................................................................................................................15

Aragon v. Republic Silver State Disposal, 292 F. 3d 654 (9th Cir. 2002)..................................16

Bradley v. Harcourt, Brace & Co., 104 F. 3d 267 (9th Cir. 1996)..............................................17

Casillas v. United States Navy, 735 F.2d 338 (9th Cir. 1984).....................................................17

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)............................................................................14

Chalmers v. Tulon Co., 101 F.3d 1012 (4th Cir. 1996) ...............................................................15

Cummings v. Connell, 316 F.3d 886 897 (9th Cir. Cal. 2003).....................................................22

Davis v. Richmond, F. & P. R. Co., 803 F.2d 1322 (4th Cir. 1986).............................................24

EEOC v. Abercrombie & Fitch Stores, Inc., No. 09-CV-602-GFK-FHM ...................................26

EEOC v. Clayton Residential Home, 874 F. Supp. 212 (N.D. Ill. 1995) ....................................23

EEOC v. General Lines, Inc., 865 F.2d 1555 (10th Cir. 1989).....................................................22

EEOC v. Harris Farms, Inc., No. 02-6199, 2005 U.S. Dist. LEXIS 37399 (E.D.
    Cal. Sept. 30, 2005)...................................................................................................................25

EEOC v. HBE Corp., 135 F.3d 543 (8th Cir. 1998) .....................................................................25

EEOC v. Hendrix College, 53 F.3d 209 (8th Cir. 1995)...............................................................23

EEOC v. North Gibson Sch. Corp., 266 F.3d 607 (7th Cir. 2001) ..............................................23

EEOC v. Rite Aid Corp., No. 03-2079, 2004 U.S. Dist. LEXIS 12356 (E.D. La.
    June 30, 2004)............................................................................................................................21

EEOC v. Wal-Mart Stores, 187 F.3d 1241 (10th Cir. 1999) ........................................................22

Fields v. Rainbow Rehab. Ctr., Inc., No. 10-10079, 2011 U.S. Dist. LEXIS 63052
    (E.D. Mich. June 14, 2011) .......................................................................................................20

Fragante v. City and County of Honolulu, 888 F.2d 591 (9th Cir. 1988)....................................17

Galen v. County of Los Angeles, 477 F.3d 652 (9th Cir. 2007)...................................................15

Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955 (10th Cir. 2002)...........25, 26

Gray v. Brown, 1994 U.S. Dist. LEXIS 15884, (N.D. Cal. 1994)...............................................18

Harris v. Winter, 2007 U.S. Dist. LEXIS 72557, (E.D. Cal. 2007)............................................15

Heller v. EBB Auto. Co., 8 F.3d 1433 (9th Cir. 1993) .................................................................19

Hemmings v. Tidyman's Inc., 285 F.3d 1174 (9th Cir. 2002).......................................................26

Khan v. FRB, No. 02 Civ. 8893, 2005 U.S. Dist. LEXIS 1543 (S.D.N.Y. Feb. 2,
    2005) ....................................................................................................................................19, 20

Kirbyson v. Tesoro Ref. & Mktg. Co., 795 F. Supp. 2d 930 (N.D. Cal. 2011) ...........................28

Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999).......................................................................26

Loftus v. Blue Cross Blue Shield, No. 08-13397, 2010 U.S. Dist. LEXIS 27867

(E.D. Mich. Mar. 24, 2010).................................................................................20

MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511 (9th Cir. 1993) ..................15

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)........................................15

Mid-American Specialties, Inc., 774 F. Supp. 2d 892 (W.D. Tenn. 2011) ...............24

Moran v. Selig, 447 F. 3d 748 (9th Cir. 2006)...........................................................16

Mukhtar v. Cal. State Univ., 299 F.3d 1053 (9th Cir. 2002) .....................................26

National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 85 L.
    Ed. 930, 61 S. Ct. 693 (1941).............................................................................25

Ngo v. Reno Hilton Resort Corp., 140 F.3d 1299 (9th Cir. 1998)..............................26

Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493 (9th Cir.
    2000) ....................................................................................................................27

Payne v. Travenol Laboratories, Inc., 565 F.2d 895 (5th Cir. 1978) .........................24

Peterson v. Hewlett-Packard Co., 358 F.3d 599 (9th Cir. 2004) ...............................19

Rose v. Midwest Express Airlines, Inc., No. 8:01CV473, 2002 U.S. Dist. LEXIS
    17665 (D. Neb. Sept. 19, 2002)...........................................................................21

Swinton v. Potomac Corp., 270 F.3d 794 (9th Cir. 2001) .........................................27

Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248 (1981) .......................16, 17

Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679 (9th Cir. 1998)............................19

Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011)................................17

U.S. v. W.T. Grant Co., 345 U.S. 629, 73 S. Ct. 894, 97 L. Ed. 1303 (1953)....................22, 23

Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003).....................16, 17

Wallis v. J.R. Simplot Co., 26 F.3d 885 (9th Cir. 1994)............................................17

Wilburn v. Y.M.C.A. of Greater Indianapolis (Ransburg Branch), No. 1:05-cv-
    1917, 2007 U.S. Dist. LEXIS 69265 (S.D. Ind. Sept. 18, 2007) ........................20

Wren v. Gould, 808 F.2d 493 (6th Cir. 1987).............................................................18

**STATUTES**

42 U.S.C. § 2000e-2..................................................................................................15

42 U.S.C. § 2000e-5(g)(1)..........................................................................................21

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 56 ...............................................................................................2

Fed. R. Civ. P. Rule 56(c) ........................................................................................14

1

2

**UNITED STATES DISTRICT COURT**

3

**NORTHERN DISTRICT OF CALIFORNIA**

4

**SAN JOSE DIVISION**

5

U.S. EQUAL EMPLOYMENT                          Case No. 5:10-cv-03911-EJD
OPPORTUNITY COMMISSION

6

Plaintiff,

7

vs.                                            **MEMORANDUM IN SUPPORT
                                               OF DEFENDANT'S MOTION FOR**

8

ABERCROMBIE & FITCH STORES, INC.               **SUMMARY   JUDGMENT OR,
                                               ALTERNATIVELY, SUMMARY**
dba ABERCROMBIE KIDS,                          **ADJUDICATION**

9

Defendant.

10

**I.     INTRODUCTION**

11

12

        The EEOC alleges that Abercrombie & Fitch Stores, Inc. ("Abercrombie") discriminated

13

against Halla Banafa and failed to accommodate her religious beliefs when it declined to offer her

14

a part-time position in an abercrombie store.  Abercrombie moves for summary judgment on the

15

EEOC's claims because there is no genuine issue of material fact, and the EEOC's claims fail as a

16

matter of law.  Specifically, the evidence establishes the following undisputed material facts:

17

18

    • Banafa wore a headscarf (or "hijab") to her interview for employment.  Janet
      Canasa, the manager who interviewed Banafa, testified that she did not consider
      the headscarf when interviewing Banafa.  Indeed, after the interview, Canasa
      indicated that Banafa was eligible for hire.

19

20

    • After the interview, Canasa reviewed Banafa's availability to work.  Banafa
      indicated on her application for employment that she was only available on
      weekends and unavailable to work four days of the week.  Canasa decided not to
      hire Banafa because of her limited availability and the fact that the store was in a
      "low" sales season and had reduced staffing needs.  As a result, Canasa decided
      not to hire Banafa for legitimate, non-discriminatory reasons unrelated to her
      headscarf.

21

22

23

24

25

    • Abercrombie did not hire anyone into the position for which Banafa applied until a
      few weeks after Banafa was interviewed.  At that time, Abercrombie hired three
      applicants, each of whom had much better availability than Banafa, and the same
      or better interview scores.  As a result, the EEOC cannot point to any individual
      who was similarly situated to Banafa and treated more favorably.

26

27

28

- The EEOC's claims for injunctive relief and punitive damages fail because Abercrombie maintains policies prohibiting discrimination, trains managers on those policies, and trains managers and its Human Resources Department how to handle requests for religious accommodation.  Since 2010 Abercrombie has specifically trained managers and the Human Resources Department how to handle requests to wear headscarves to work for religious reasons, and has made religious accommodations relating to headscarves.

- Banafa's husband and father testified that Banafa did not always wear a headscarf prior to her interview with Abercrombie, and in July 2008 – a few months after her interview with Abercrombie – Banafa completely stopped wearing a headscarf.

These undisputed facts demonstrate that summary judgment should be granted in Abercrombie's favor on the EEOC's claim of disparate treatment discrimination and failure to accommodate an alleged religious belief.  In the alternative, the Court should grant summary judgment to Abercrombie on the EEOC's claims for injunctive relief and punitive damages.

## II.    STATEMENT OF FACTS

### A.  Abercrombie & Fitch

Abercrombie & Fitch Stores, Inc. is a clothing retailer that operates stores under a variety of brand names, including abercrombie, which sells casual apparel targeted to boys and girls ages 7 to 14.[1]  (Canasa Dep. 211-12).[2]  Abercrombie is unique among retailers in that it does virtually no advertising through television, print, or radio.  (Canasa Decl. ¶ 5).  Rather, Abercrombie advertises through its in-store experience.  (Canasa Decl. ¶ 5).To ensure a consistent in-store

---

[1]  For ease of reference "Abercrombie" will be used hereinafter to denote both defendant Abercrombie & Fitch Stores, Inc. and the abercrombie brand.

[2]  Cited pages of Janet Canasa's deposition are attached as Exhibit A to the Declaration of Samantha Stilp in Support of Defendant's Motion for Summary Judgment or, in the Alternative, Summary Adjudication ("Stilp Decl.")  and are referred to herein as "Canasa Dep. ___."  Cited pages of Halla Banafa's deposition are attached as Exhibit B to Stilp Decl. and are referred to herein as "Banafa Dep. ___."  Cited pages of Deon Riley's deposition are attached as Exhibit C to Stilp Decl. and are referred to herein as "Riley Dep. ___."  Cited pages of Adil Muschelewicz's deposition are attached as Exhibit D to Stilp Decl. and are referred to herein as "Muschelewicz Dep. ___."  Cited pages of Ahmed Banafa's deposition are attached as Exhibit E to Stilp Decl. and are referred to herein as "Ahmed Banafa Dep. ___."  Cited pages of Dr. Kathleen Lundquist's deposition are attached as Exhibit F to Stilp Decl. and are referred to herein as "Lundquist Dep. ___."  Janet Canasa's declaration is attached as Exhibit G and referred to herein as "Canasa Decl. __."

1
2
3
4
5
6
7
8
9

experience, Abercrombie enforces a dress and grooming policy known as the Look Policy.  (Riley Dep. 146; Canasa Dep. 124; Canasa Dep. Exh. 11).  Under the Look Policy, associates must wear clothing that is similar to the Abercrombie style, and not wear clothing that is inconsistent with the Abercrombie style.  (Canasa Dep. 46-47).  The Look Policy also prohibits piercings, fingernail paint, heavy makeup, and any form of headwear.  (Canasa Dep. 46-47).  All store employees are required to comply with the Look Policy.  (Riley Dep. 113).  Applicants for employment are informed of the Look Policy during the interview process.  (Canasa Dep. 130-132; Riley Dep. 141).

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Abercrombie is an equal employment opportunity employer and maintains policies that prohibit discrimination, which are publicized to all employees.  (Riley Dep. 100, Canasa Dep. Exh. 23).  Abercrombie maintains a Human Resources Department which, among other duties, is charged with enforcing Abercrombie's non-discrimination policies, investigating claims of discrimination, and responding to requests for religious accommodation.  (Riley Dep. 46-50; 161-162).  Each Abercrombie store has a Human Resources Representative, and employees and applicants may make a complaint to the Human Resources Department, or request a religious accommodation, by calling a toll-free number. (Riley Dep. 47-50, 284-285).  Managers are instructed to call the Human Resources Department if they have any questions regarding Abercrombie's equal employment opportunity policies, and also if they receive any requests for religious accommodation.  (Riley Dep. 156).  The Human Resources Department evaluates requests for accommodation on a case by case basis and, where possible, will recommend an accommodation after considering such factors as the job position of the employee requesting the accommodation, the size of the store, the type of accommodation requested, and the like.  (Riley Dep. 47, 115, 148, 161, 186, 196-197, 232).  Indeed, Abercrombie has made a variety of religious accommodations for employees. (Riley Dep. 170; 190, 193 (accommodations granted for

headscarf worn in Company colors); 204-205 (accommodation granted for model to have facial

hair that was not noticeable); 242-244 (accommodation granted for impact associate to wear

bracelet that was not noticeable for religious reasons).

### B. Abercrombie's Interview Procedure

Abercrombie interviews thousands of applicants each year.  (Riley Dep.  66).  In order to

maintain consistent and fair interview procedures, Abercrombie utilizes a "People Selection

Program," in which all managers are trained to conduct interviews by following a structured

interview script called the Interview Guide.  (Riley Dep. 64-67, Canasa Dep. Exh. 14).  The

People Selection Program and the Interview Guide were prepared by an outside expert consultant,

Dr. Kathleen Lundquist, prior to the events giving rise to this litigation.  (Lundquist Dep. 81-82).

Dr. Lundquist is a nationally known expert industrial organizational psychologist who has been

invited by the EEOC to testify before it. (Lundquist Dep. 23, 27).

Managers are trained to closely follow the Interview Guide prepared by Dr. Lundquist

during an interview.  (Canasa Dep. 43; Riley Dep. 65).  The Interview Guide provides an opening

script, specific questions to discuss with candidates, and a closing script.  (Canasa Dep. 43; Stilp

Decl. ¶ 10 Exh. H).  Managers are instructed not to ask questions that do not appear on the

Interview Guide.  (Canasa Dep. 69, Canasa Dep. Exh. 14).  Further, the People Selection Program

specifically prohibits managers from discussing an applicant's religion during an interview.

(Canasa Dep. 165-166; Riley Dep. 101-105, Exh. 14).  As noted above, if applicants ask

questions regarding religion or religious accommodation, interviewing managers are trained to

contact Human Resources.  (Riley Dep. 105, Exh. 14).

The Interview Guide also requires an interviewing manager to identify a numerical score

for each candidate.  A candidate who receives a score of six or greater is considered to meet

expectations and be recommended for hire.  (Riley Dep. 89).  However, a store need not hire every applicant who passes the interview. (Lundquist Dep. 127).  When a store has numerous applicants who pass the interview phase, the store hires "the most qualified" based on "their availability and the needs of the business." (Canasa Dep. 202).  To determine whether an applicant meets the "needs of [the] store" for staffing purposes, the interviewing manager considers the applicant's availability and the staffing needs during the season for which she is seeking employment.  (Canasa Dep. 53).

Abercrombie trains its managers to conduct interviews in a quiet, distraction-free area to help make applicants feel comfortable.  (Riley Dep. 80).  Although Abercrombie sometimes conducts interviews outside of the store, when there are no other managers on duty, the manager is required to hold the interview inside the store.  (Canasa Dep. 39).  Typically, interviews are conducted in either the food court or, where there are not many associates working in the store, the back stockroom or office.  (Riley Dep. 80).

### C.  Complainant Halla Banafa

Halla Banafa applied for a part-time impact position at Abercrombie's Great Mall store on March 8, 2008.  (Banafa Dep. 103, Banafa Dep. Exh. 2).[3]  Impact associates are responsible for processing merchandise shipments and transfers, restocking the sales floor, and executing and updating floorsets. (Canasa Dep. 26-27, Canasa Dep. Exh. 2).  Impact associates are expected to work two to three shifts per week.  (Canasa Dep. 27-28).  Each shift is four hours long.  (Canasa Dep. 28).  In 2008, Abercrombie paid Impact associates $8.00 per hour.  (Canasa Dep. 210).

The month of March is considered "low season" at Abercrombie, because sales are low

---

[3] Banafa had never held a job prior to the time she applied to work at Abercrombie.  (Banafa Dep. 64).  Before interviewing for a position with Abercrombie, Banafa applied to and interviewed for positions with FedEx and Starbucks.  (Banafa Dep. 73-75). Banafa was not offered employment with either of these companies.  (Banafa Dep. 74-75).

and staffing needs are also low.  (Canasa Dep. 52; Canasa Decl. ¶ 7).  As a result, the store places

a greater emphasis on store needs and applicant availability in making hiring decisions.  (Canasa

Dep. 52).

Prior to her interview, Banafa shopped regularly at the Abercrombie store and knew that

store associates wore Abercrombie clothing or clothing that looked similar to the Abercrombie

brand.  (Banafa Dep. 89).  Thus, Banafa knew that it was important for her to wear Abercrombie

clothing to the interview.  (Banafa Dep. 88-89).  Nonetheless, Banafa arrived for the interview

wearing a turtleneck, red nail polish, and a nose ring, all of which were inconsistent with the

Abercrombie style and prohibited by the Look Policy.  (Banafa Dep. 109-111).

Banafa also wore a headscarf, or hijab, to her interview.  (Banafa Dep. 113). Although

Banafa testified that she wore the hijab to the interview because she "believe[s] it is required in

[her] religion," Banafa's father and husband both testified that they had seen multiple

photographs of Banafa in 2007, prior to her interview with Abercrombie, in which she was not

wearing a hijab.  (Banafa Dep. 36; Ahmed Banafa Dep. 25; Muschelewicz Dep. 66-67).  Indeed,

by July 2008, just a few months after her interview with Abercrombie, Banafa had stopped

wearing a hijab altogether.  (Banafa Dep. 38-40; Ahmed Banafa Dep. 53 ("she was bragging

about [no longer wearing her headscarf] in Facebook – pictures everywhere"); Muschelewicz

Dep. Exh. 9).

Janet Canasa was the only manager on duty at the time Banafa arrived for her interview.

(Canasa Dep. 36).  Because Canasa was the only manager at the store at the time Banafa

interviewed, she conducted the interview in the store office.  (Canasa Dep. 39).

Banafa and Canasa testified differently about some of what occurred during the interview.

Solely for purposes of this motion, where there are differences, Abercrombie will assume that

Banafa testified truthfully.  Banafa testified that Canasa stated that her father worked in Saudi

DEFENDANT'S NOTICE OF MOT. AND MOT. FOR SUMMARY
JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION
CASE NO. 5:10-cv-03911-EJD

- 12 -

Arabia, and that in response, Banafa told Canasa that she was from Saudi Arabia.  (Banafa Dep. 117). Banafa also testified that after discussing diversity and the Company's "appearance policy," Canasa asked Banafa if she was Muslim, if she had to wear her headscarf, and stated that she knew Muslims that did not wear hijabs.  (Banafa Dep. 116-117).[4]

Banafa and Canasa agree that later in the interview, Canasa explained the Company's dress and grooming policies. (Banafa Dep. 117).  Canasa told Banafa that she could not wear a turtleneck in the summer, and told her that her red nail polish and nose ring would be inconsistent with the Company's Look Policy. (Banafa Dep. 117-119; 149). Banafa asked Canasa whether her headscarf "was going to be an issue."  (Banafa Dep. 119).  Canasa responded that she did not know and would have to ask her manager. (Banafa Dep. 119, Canasa Dep. 128).

Abercrombie hires people who are "energetic," "outgoing," and enthusiastic." (Canasa Dep. 89).  Canasa testified that during the interview, Banafa was "quiet," "not enthusiastic, not very outgoing, not energetic," and did not come across as "confident."  (Canasa Dep. 87, 99, 194).  Canasa "felt that [Banafa] was not happy to be [at the interview]."  Nonetheless, Canasa gave Banafa a total interview score of seven, indicating that she was eligible for hire.  (Canasa Dep. 96, 99).

After the interview, Canasa reviewed Banafa's availability. (Canasa Dep. 98; Canasa Decl. ¶ 12). Banafa's application indicated that she was not available for work at all on Monday, Tuesday, Wednesday or Thursday.  (Canasa Dep. 60, Banafa Dep. Exh. 2; Canasa Decl. ¶ 13). Given her extremely limited availability, and the fact that it was "low season," Banafa was not hired. (Canasa Dep. 98; Canasa Decl. ¶ 13).

In fact, the Milpitas Mall store hired only three individuals in the Part-Time Impact

---

[4]  In contrast, Canasa testified that she did not ask Banafa about her headscarf or her religion, and that she did not state that she knew Muslims that did not wear headscarves.  (Canasa Dep. 43-44). Canasa also testified that she does not recall mentioning that her father worked in Saudi Arabia. (Canasa Dep. 45).

position in March 2008: Jessica Baron was hired on March 28, and Argenis Lopez and Kirk Saechao were hired on March 29. (Canasa Decl. ¶ 15). Lopez and Baron received interview scores of "8" and "9" respectively, and indicated on their applications that they had availability on every day of the week. (Canasa Decl. ¶¶ 17, 18; Canasa Decl. Exh. A). Saechao received an interview score of "7" and indicated on his application that he was available every day except Wednesday. (Canasa Decl. ¶ 19). As a result, all three applicants who were hired in March 2008 had much better availability and the same or better interview scores as Banafa. (Id.)

At the end of the interview, Canasa informed Banafa that she would contact her by the following Friday if Abercrombie decided to hire her. (Banafa Dep. 120-121). Nonetheless, the day after her interview, Banafa completed a form to the EEOC alleging the Company discriminated against her on the basis of her religion, before she even knew whether she would be hired. (Banafa Dep. 123, 130).

### D. Banafa Stops Wearing Her Hijab Altogether

A few months after her interview with Abercrombie, Banafa moved out of her parents' house, married her friend Adil Muschelewicz, moved to South Carolina where she enrolled in college, began working for Panera Bread and Olive Garden, and completely abandoned wearing a hijab. (Banafa Dep. 21-22, 24, 51, 64, Muschelewicz Dep. Exhs. 3,6). She did not wear a hijab at her deposition in this case. (Banafa Dep. 35).

## III.   STANDARD OF REVIEW

A motion for summary judgment should be granted if the moving party shows that there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To withstand summary judgment, the non-movant must make a showing sufficient to establish a genuine dispute of material fact for trial. Celotex, 477 U.S. at 321-323. "Bald assertions that genuine issues of

material fact exist are insufficient" and a factual dispute is genuine "only if a reasonable trier of fact could find in favor of the nonmoving party."  <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 658 (9th Cir. 2007), <u>citing</u> <u>MAI Sys. Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 518 (9th Cir. 1993) and <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**IV.   SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF ABERCROMBIE ON THE EEOC'S RELIGIOUS DISCRIMINATION CLAIM BECAUSE THE EEOC CANNOT ESTABLISH A DISPARATE TREATMENT OR FAILURE TO ACCOMMODATE CASE.**

Title VII prohibits an employer from discriminating against an employee on the basis of religion.  42 U.S.C. § 2000e-2.  A plaintiff may proceed under two theories: (1) "disparate treatment" on the basis of religion; or (2) "failure to accommodate" a *bona fide* religious practice. <u>See Chalmers v. Tulon Co.</u>, 101 F.3d 1012, 1018 (4th Cir. 1996).  Because the EEOC's claims fail as a matter of law under either theory, summary judgment should be granted in favor of Abercrombie.

**A.      The EEOC Cannot Establish a Disparate Treatment Claim**

To establish a *prima facie* case of disparate treatment for failure to hire, the plaintiff must show that: (1) the claimant is a member of the protected group; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her being qualified, she was rejected; and (4) another similarly situated employee not of her protected group was selected.  <u>Harris v. Winter</u>, Nos. CIV. S-02-2436 KJM PS, CIV. S-02-2440 KJM PS, 2007 WL 2900168, *17 (E.D. Cal. Sept. 28, 2007), <u>citing</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. Once the employer identifies a legitimate nondiscriminatory

DEFENDANT'S NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION CASE NO. 5:10-cv-03911-EJD

- 15 -

reason for the employment action, a plaintiff must prove that the proffered reason was a "pretext" for discrimination. Id.  The plaintiff maintains "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Aragon v. Republic Silver State Disposal, 292 F. 3d 654, 659 (9th Cir. 2002), citing Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

> **i.      The EEOC Cannot Establish a Prima Facie Case Because Plaintiff Was Not Treated Differently Than Similarly Situated Employees.**

The EEOC cannot establish a *prima facie* case because Banafa was not treated less favorably than similarly situated applicants.  To show other applicants outside her protected class are similarly situated, the EEOC must demonstrate, "at the least, that [she] is similarly situated… in all material respects." Moran v. Selig, 447 F. 3d 748, 755 (9th Cir. 2006). Other individuals are "similarly situated" to the plaintiff when they have "similar jobs and display similar conduct." Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).

The EEOC has not and cannot identify any applicant interviewed for the part-time impact position with a similarly limited schedule and similar interview score who was treated more favorably than Banafa, i.e. nobody with Banafa's score and limited availability was hired by the Milpitas store in March 2008.  The applicants that were hired had much better availability and the same or better interview scores.  (Canasa Decl. ¶¶ 17-19).  Thus, no similarly situated employee was treated more favorably than Banafa and her disparate treatment claim fails as a matter of law for this reason alone.

> **ii.      Abercrombie has Articulated a Legitimate, Nondiscriminatory Reason for not Hiring Banafa**.

Even if the EEOC could establish a *prima facie* case, Abercrombie still prevails because Abercrombie has set forth a legitimate, nondiscriminatory reason for not hiring Banafa.  "'The defendant need not persuade the court that it was actually motivated by the proffered reasons,' . . .

but simply must present evidence raising a genuine issue of whether 'the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." <u>Casillas v. United States Navy</u>, 735 F.2d 338, 343 (9th Cir. 1984) <u>citing</u> <u>Burdine</u>, 450 U.S. at 254.

Here, Banafa was not hired as a result of her limited availability.  (Canasa Dep. 60, 194-195; Canasa Decl. ¶ 13).  Even if an applicant passes an interview, the hiring manager must still consider "the needs of [the] store," "staffing goals," whether "it's busy season" and ultimately, the applicant's availability.  (Canasa 193-194).  Given that March is considered low season in the retail industry, during this time, Abercrombie hired people based on the store's needs and the individuals' availability.  (Canasa Dep. 52; Canasa Decl. ¶ 7, 9).  Banafa wanted to work weekends only, with no availability Monday through Thursday.  (Canasa Dep. 60, Banafa Dep. Exh. 2). This limited availability was particularly problematic at the abercrombie store in the Great Mall.  (Canasa Decl.¶ 6, 9-10.)

Accordingly, Abercrombie has proffered a legitimate, non-discriminatory reason for not hiring Banafa. <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1049 (8th Cir. 2011) ("employers are entitled to compare applicants' performance during interviews," and have discretion to choose among equally qualified candidate.).

iii.    **The EEOC Cannot Show Pretext**.

To avoid summary judgment, the EEOC must further set forth "specific, substantial evidence of pretext."  <u>Bradley v. Harcourt, Brace & Co.</u>, 104 F. 3d 267, 270 (9th Cir. 1996) <u>citing</u> <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 890 (9th Cir. 1994);  <u>Fragante v. City and County of Honolulu</u>, 888 F.2d 591, 595 (9th Cir. 1988).  A plaintiff may prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that discrimination more likely motivated the employer.  <u>Vasquez</u>, 349 F.3d at 641-42.  Under Title

VII, "a court 'look[s] to the employer's motivation, not the applicant's perceptions, or even an objective assessment, of what qualifications are required for a particular position.'" Gray v. Brown, No. C-93-2732-MHP, 1994 WL 621977, *5 (N.D. Cal. 1994) quoting Wren v. Gould, 808 F.2d 493, 502 (6th Cir. 1987). Indeed, "Title VII is a tool to scrutinize the intent behind a hiring decision, not to judicially review an employer's business judgment." Id. at *15.

Here, Canasa testified that she considers store needs and applicant availability when selecting individuals for hire, particularly during the store's low season. (Canasa Dep. 52, 202; Canasa Decl. ¶ 9). The EEOC can offer no evidence to refute Canasa's testimony that the store was experiencing a traditional low season at the time Banafa applied, nor can the EEOC dispute that Banafa had no availability four days out of the week.  Banafa's limited availability made her a less desirable candidate than other applicants.

The EEOC will presumably argue that Canasa impermissibly asked Banafa whether she was required to wear a headscarf and that such inquiry is sufficient to show pretext.  (Banafa Dep. 116-117). This argument is unavailing.  Canasa testified that Banafa's headscarf had no bearing on the decision not to hire Banafa, and that the decision was based on Banafa's interview performance and her availability.  (Canasa Dep. 49, 92-93, 96-98; Canasa Decl. ¶¶ 13-14). Indeed, Canasa rated Banafa as "recommended for hire" after the interview, conclusively demonstrating that she did not believe the headscarf prevented her from hiring Banafa.  (Canasa Dep. 95-96)  Moreover, Banafa testified that Canasa did not say that the headscarf was a violation of the company Look Policy, rather Canasa stated that she did not know whether the headscarf violated the Look Policy.  (Banafa Dep. 119; Canasa Dep. 92)  In contrast, Canasa specifically informed Banafa that her turtleneck, nose piercing, and nail polish would be in violation of the Company's Look Policy. (Banafa Dep. 148-150)  Thus, there is no evidence –

1   aside from Banafa's conclusory assumption – to suggest that Banafa's religion negatively impact

2   Canasa's hiring decision.

3        Banafa was not hired as a result of her limited availability.  The EEOC can provide no

4   evidence to the contrary and thus cannot show pretext.  Even viewing the record in the light most

5   favorable to it, the EEOC has insufficient evidence of pretext, and thus summary judgment is

6   proper on its disparate treatment claim.

7

8   ## V.   THE EEOC CANNOT ESTABLISH A FAILURE TO ACCOMMODATE CLAIM.

9        To establish a *prima facie* case of religious discrimination on the basis of a failure to

10  accommodate, a plaintiff must establish that (1) she had a *bona fide* religious belief, the practice

11  of which conflicts with an employment duty;[5] (2) she informed her employer of the belief and

12  conflict; and (3) the employer discharged, threatened, or otherwise subjected her to an adverse

13  employment action because of her inability to fulfill the job requirement.  Peterson v. Hewlett-

14  Packard Co., 358 F.3d 599, 606 (9th Cir. 2004) (citing Heller v. EBB Auto. Co., 8 F.3d 1433,

15  1438 (9th Cir. 1993)).  Only after a plaintiff establishes a *prima facie* case does the burden then

16  shift to the defendant to show that it "'initiated good faith efforts to accommodate reasonably the

17  employee's religious practices or that it could not reasonably accommodate the employee without

18  undue hardship.'"  Id. (*quoting* Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679, 681 (9th Cir.

19  1998)).

20       A plaintiff fails to satisfy the third prong of a *prima facie* religious accommodation case if

21  she cannot show that she was subject to an adverse employment action because of her inability to

22  fulfill a job requirement in conflict with a *bona fide* religious belief.  See Khan v. FRB, No. 02

23  Civ. 8893, 2005 U.S. Dist. LEXIS 1543, at *19-23 (S.D.N.Y. Feb. 2, 2005) (summary judgment

24

25

26

27  _____

28  [5] There is substantial evidence that Banafa's alleged religious belief was not sincerely held at the time of her interview.  However, because there may be a genuine issue of fact as to this issue, Abercrombie does not request summary judgment on that basis.

1   granted for defendant on religious accommodation claim where plaintiff could not meet third

2   element of *prima facie* case). In <u>Khan</u>, the plaintiff requested a modified work schedule during

3   the month of Ramadan, and was later disciplined and eventually terminated for absenteeism. <u>See</u>

4   <u>id.</u> at *3-9. However, the plaintiff failed to introduce any evidence that her termination was

5   related to her request for religious accommodation, while the defendant introduced "both direct

6   and circumstantial evidence that the plaintiff was not disciplined because of her religious beliefs,"

7   as the warnings she received did not relate to absences during Ramadan. <u>See</u> <u>id.</u> at *21-22

8   (determining that "a reasonable jury could not conclude that the plaintiff was disciplined because

9   she requested an accommodation for Ramadan"). Noting that the third prong of a religious

10  accommodation *prima facie* case "in effect encompasses two distinct principles: the plaintiff must

11  be the subject of discipline, and the *discipline must be the consequence of the plaintiff's exercise*

12  *of her religious beliefs*," the court determined that the plaintiff failed to establish a *prima facie*

13  case. <u>See</u> <u>id.</u> at *16, 23 (emphasis added).

14        Other courts have similarly granted summary judgment where the plaintiff fails to show

15  that the employer undertook an adverse employment action <u>because of</u> a conflict between the

16  plaintiff's alleged bona fide religious belief and a job requirement. <u>See</u>, <u>e.g.</u>, <u>Loftus v. Blue Cross</u>

17  <u>Blue Shield</u>, No. 08-13397, 2010 WL 1139338, at *5 (E.D. Mich. Mar. 24, 2010) (plaintiff failed

18  to establish *prima facie* religious accommodation case because evidence showed he was

19  discharged for "misconduct and a violation of several policies" and "[n]othing in the record

20  supports the termination was based on Plaintiff's request to go on a pilgrimage"); <u>Wilburn v.</u>

21  <u>Y.M.C.A. of Greater Indianapolis (Ransburg Branch)</u>, No. 1:05-cv-1917, 2007 WL 2752391, at

22  *6 (S.D. Ind. Sept. 18, 2007) (granting summary judgment for employer where there was no

23  "causal connection between [the plaintiff's] religious practices and the end of her employment");

24  <u>Fields v. Rainbow Rehab. Ctr., Inc.</u>, 833 F. Supp. 2d 694, 699-700 (E.D. Mich. 2011) (no *prima*

1    *facie* religious accommodation case where plaintiff "fail[ed] to present evidence to raise a

2    genuine issue of fact as to whether Defendants discharged or disciplined him for failing to comply

3    with employment requirement(s) that conflicted with his religious beliefs"); <u>Rose v. Midwest</u>

4    <u>Express Airlines, Inc.</u>, No. 8:01CV473, 2002 WL 31095361, at *4 (D. Neb. Sept. 19, 2002)

5    (granting summary judgment for employer because plaintiff could not "establish that her

6    termination was a result of her religious beliefs or practices").

7

8           Here, Canasa testified that she did not consider Banafa's headscarf when she made the

9    decision not to hire Banafa, and instead she determined Banafa was <u>eligible for hire</u> following her

10   interview.  (<u>Id.</u> 94-96).  Canasa subsequently made the decision not to hire Banafa because of

11   Banafa's limited availability as indicated on Banafa's employment application.  (Canasa Dep. 49,

12   61-62, 92-93, 96-98 and Canasa Decl. ¶ 13).  There is no evidence that Abercrombie failed to hire

13   Banafa because of a conflict between her religious beliefs and an employment policy.

14

15          Because the EEOC cannot show that Banafa was not hired *because* she wore a headscarf,

16   it cannot establish the third element of its *prima facie* case and summary judgment should be

17   granted in favor of Abercrombie on the EEOC's failure to accommodate claim.

18   **VI.    SUMMARY JUDGMENT SHOULD BE ENTERED FOR ABERCROMBIE ON**
         **THE EEOC'S CLAIMS FOR INJUNCTIVE RELIEF**.
19

20          Pursuant to 42 U.S.C. § 2000e-5(g)(1) "[i]f the court finds that the respondent has

21   *intentionally engaged in or is intentionally engaging in an unlawful employment practice* charged

22   in the complaint, the court *may* enjoin the respondent from engaging in such unlawful

23   employment practice, and order such affirmative action as *may* be appropriate…."  42 U.S.C. §

24   2000e-5(g)(1) (emphasis added).  To the extent the Court grants summary judgment in favor of

25   Abercrombie on Plaintiff's religious discrimination claim, Plaintiff's claim for injunctive relief

26   must likewise fail.  <u>See</u>, <u>e.g.</u>, <u>EEOC v. Rite Aid Corp.</u>, No. 03-2079, 2004 WL 1488578, at *11

27   (E.D. La. June 30, 2004) ("Because the Court has granted summary judgment in favor of

28

Defendant on the sexual harassment hostile work environment claim, summary judgment must also be granted in Defendant's favor insofar as the EEOC seeks injunctive relief relative to sexual harassment.").

Even were the Court not to grant summary judgment to Abercrombie on the EEOC's underlying claims, the EEOC's claims for injunctive relief should be denied as a matter of law for the reasons set forth below.

> A.   **The Court Should Deny the EEOC's Request for Injunctive Relief Because the EEOC Cannot Meet Its Burden of Proving a Cognizable Danger of Recurrent Violations.**

Because the "purpose of an injunction is to prevent future violations," a plaintiff is not entitled to injunctive relief unless the plaintiff shows that "there exists some cognizable danger of recurrent violation, something more than [a] mere possibility which serves to keep the case alive." U.S. v. W.T. Grant Co., 345 F.2d 629, 633, 73 S. Ct. 894, 97 L. Ed. 1303 (1953). Thus, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed…." Cummings v. Connell, 316 F.3d 886, 897 (9th Cir. Cal. 2003); see also Anderson v. Davila, 125 F.3d 148, 164 (3d Cir. 1997) ("injunctive relief is inappropriate" if plaintiff "is unable to introduce evidence" that alleged wrongful conduct is ongoing and that "there is a credible threat that it will recur in the future").

Consistent with the standard established by the Supreme Court in W.T. Grant Co., courts have denied the EEOC's requests for injunctive relief where the EEOC fails to show that more than a "mere possibility" exists that the defendant will violate the applicable discrimination statute in the future. See, e.g., EEOC v. Wal-Mart Stores, 187 F.3d 1241, 1250 (10th Cir. 1999) (affirming denial of injunctive relief where EEOC "failed to show anything more than a mere possibility of recurrent violations of the ADA by [the defendant] so as to warrant a grant of injunctive relief"); EEOC v. General Lines, Inc., 865 F.2d 1555, 1565 (10th Cir. 1989) (affirming

denial of injunctive relief because "there is nothing in the record in the instant case indicating 'some cognizable danger' that [the defendant] will at any future date participate in a like Title VII violation"); EEOC v. North Gibson Sch. Corp., 266 F.3d 607, 621 (7th Cir. 2001) (affirming denial of injunctive relief where EEOC failed to identify current discriminatory practice or demonstrate "reasonable expectation" that discriminatory practice would be adopted by defendant in the future); EEOC v. Hendrix College, 53 F.3d 209, 210 (8th Cir. 1995) (affirming defendant's attorney fee award and observing that "[t]he district court granted [the defendant's] motion for summary judgment, concluding that an injunction was not appropriate because the EEOC did not have any evidence that [the defendant] continued to engage in any unlawful practices, and because the EEOC failed to demonstrate a substantial likelihood of a recurrence of the past violations").

Here, Banafa has moved to South Carolina and has obtained a job she "loves", and has not expressed an interest in working at Abercrombie.  (Banafa Dep. 69). As a result, there is no need for injunctive relief relating to Banafa.

Moreover, Abercrombie maintains and applies anti-discrimination policies and training, and Abercrombie now trains human resources staff and in-store managers on issues specifically relating to hijabs.  See (Canasa Dep. 146-148; Riley Dep. 100, 186, Canasa Dep. Exh. 23).  Since 2010, Abercrombie has allowed associates to wear hijabs as a religious accommodation.  (Riley Dep. 170, 281). Although Abercrombie expressly denies any current or past violation of Title VII, the evidence shows that there is no "cognizable danger of recurrent violation[s]" of Title VII by Abercrombie on the basis of religion.  See W.T. Grant Co., 345 U.S. at 633.  Summary judgment is thus warranted in favor of Abercrombie on the EEOC's claim for injunctive relief.  See EEOC v. Clayton Residential Home, 874 F. Supp. 212, 215-16 (N.D. Ill. 1995) (granting defendant's motion for summary judgment on EEOC's claim for injunctive relief where "the purpose of Title

1    VII will not be advanced further by enjoining [the defendant] from doing what it is already not

2    doing, engaging in unlawful employment practices").

3        B.      **The EEOC's Requested Injunctive Relief Is Impermissibly Overbroad and Inapplicable to the Facts of This Case**

4

5            The EEOC's request for injunctive relief is also impermissibly overbroad and inapplicable

6    to the alleged harm at issue in this case.

7            First, the EEOC asks the Court to enter an order prohibiting Abercrombie from "engaging

8    in any employment practices which discriminate on the basis of religion" and ordering

9    Abercrombie to "institute and carry out policies, practices, and programs which provide equal

10   opportunities for its employees of all religions and which eradicate the effects of its past and

11   present unlawful employment practices." See First Amended Complaint, Prayer for Relief (Dkt.

12   No. 5 at 4). Essentially, the EEOC seeks an injunction requiring Abercrombie to "obey Title

13   VII." Courts have consistently denied such overbroad and generalized proposals. See Mid-

14   American Specialties, Inc., 774 F. Supp. 2d 892, 895-96 (W.D. Tenn. 2011) (denying portions of

15   EEOC's requested injunction because they would "essentially order [the defendant] to comply

16   with Title VII" and "[s]uch provisions are overbroad"); Davis v. Richmond, F. & P. R. Co., 803

17   F.2d 1322, 1328 (4th Cir. 1986) (vacating portions of injunction that prohibited defendant from

18   "committing further violations of Title VII"); Payne v. Travenol Laboratories, Inc., 565 F.2d 895,

19   897 (5th Cir. 1978) (noting that "[s]uch 'obey the law' injunctions cannot be sustained" and that

20   "[t]his command of specificity is a reflection of the seriousness of the consequences which may

21   flow from a violation of an injunctive order"). Accordingly, the Court should deny the EEOC's

22

23   overbroad request for injunctive relief. See Davis, 803 F.2d at 1328 (striking portion of

24   injunction that was "fatally reminiscent of [a] broad injunction to 'obey the statute,' as '[s]uch an

25

26   injunction impermissibly subjects a defendant to contempt proceedings for conduct 'unlike and

27

28

1    unrelated to the violation with which . . . [it] was originally charged'") (quoting <u>National Labor</u>

2    <u>Relations Board v. Express Publishing Co.</u>, 312 U.S. 426, 85 L. Ed. 930, 61 S. Ct. 693 (1941)).

3         Second, the EEOC's claim for injunctive relief fails because any injunctive relief would

4    not address the alleged harm at issue in this case.  "It is well settled [that] an injunction must be

5    narrowly tailored to remedy the harm shown."  <u>Garrison v. Baker Hughes Oilfield Operations,</u>

6    <u>Inc.</u>, 287 F.3d 955, 962 (10th Cir. 2002); <u>see also</u> <u>EEOC v. Harris Farms, Inc.</u>, No. 02-6199, 2005

7    U.S. Dist. LEXIS 37399, at *5-6 (E.D. Cal. Sept. 30, 2005) (noting that "court's discretion in

8    fashioning injunctive relief is not unlimited and provisions of an injunction may be improper 'if

9    they are broader than necessary to remedy the underlying wrong.'") (quoting <u>EEOC v. HBE</u>

10   <u>Corp.</u>, 135 F.3d 543, 557 (8th Cir. 1998)).

11        Here, the EEOC alleges that Abercrombie's interviewing manager violated Title VII when

12   she allegedly refused to hire Banafa because of Banafa's Muslim religion.  <u>See</u> First Amended

13   Complaint, ¶ 8.  It is undisputed that Abercrombie maintains and applies anti-discrimination

14   policies and trains its managers regarding those policies.  <u>See</u> (Canasa Dep. 146-147; Riley Dep

15   59, 62-63, 100).  Canasa was trained on those policies; knew that she was prohibited from asking

16   questions about religion or making decisions based on religion; and knew that she should call the

17   Human Resources Department if any question regarding religious accommodation came up

18   during the interview.  (Canasa Dep. 132, 160, 166).

19        Even if the EEOC could establish that Canasa violated Abercrombie's procedures, no

20   structural change to Abercrombie's policies or practices would remedy an alleged underlying

21   wrong allegedly committed by a single manager acting contrary to policies on which she was

22   trained.  Notably, in a similar religious discrimination case involving the EEOC and

23   Abercrombie, the Court denied the EEOC's request for broad injunctive relief comparable to that

24   sought here, finding that Abercrombie's current policies are consistent with the law.  <u>See</u> Req. for

1  Judicial Notice, Exh. A, Transcript of Trial in <u>EEOC v. Abercrombie & Fitch Stores, Inc.</u>, No.

2  09-CV-602-GFK-FHM, Trial Tr. vol. III, 508-512, July 20, 2011 (Frizzel, J.). Accordingly,

3  because the EEOC's requested injunctive relief is not "narrowly tailored to remedy the [alleged]

4  harm shown," injunctive relief is inappropriate in this case. <u>See Garrison</u>, 287 F.3d at 962.

5

6  VII.    **ABERCROMBIE IS ENTITLED TO SUMMARY JUDGMENT ON THE EEOC'S CLAIM FOR PUNITIVE DAMAGES**.

7         In <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 534-35 (1999), the Supreme Court

8  established that to be liable for punitive damages under Title VII, an employer must intentionally

9  discriminate "with 'malice or reckless indifference to the [plaintiff's] federally protected rights.'

10 The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be

11 acting in violation of federal law, not its awareness that it is engaging in discrimination." <u>Id.</u>; <u>see</u>

12 <u>also</u> <u>Mukhtar v. Cal. State Univ.</u>, 299 F.3d 1053, 1068 n.15 (9th Cir. 2002) ("To award punitive

13 damages, the individuals' conduct must have been more than just intentional discrimination --

14 instead they must have known they were acting in violation of federal law."). Thus, the standard

15 for punitive damages is a "heightened" one. <u>See Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174,

16 1198 (9th Cir. 2002); <u>Ngo v. Reno Hilton Resort Corp.</u>, 140 F.3d 1299, 1304 (9th Cir. 1998)

17 (punitive damages require "a showing beyond the threshold level of intent required for

18 compensatory liability").

19

20         There is a complete lack of evidence of malice or reckless indifference to Banafa's Title

21 VII rights on the part of Abercrombie. As set forth above, evidence shows that Canasa's decision

22 not to hire Banafa was not based on her religion. Even were this Court to hold that there was a

23 genuine issue of fact, there is certainly no evidence of the type of malice or recklessness required

24 to meet the heightened standard for punitive damages under <u>Kolstad</u>.

25

26

27

28

DEFENDANT'S NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION CASE NO. 5:10-cv-03911-EJD

- 26 -

1   Moreover, for punitive damages purposes, "an employer may not be vicariously liable for

2   the discriminatory employment decisions of managerial agents where these decisions are contrary

3   to the employer's good faith efforts to comply with Title VII." Kolstad, 527 U.S. at 528; see also

4   Swinton v. Potomac Corp., 270 F.3d 794, 810-11 (9th Cir. 2001); Passantino v. Johnson &

5   Johnson Consumer Prods., Inc., 212 F.3d 493, 516 (9th Cir. 2000) (stating same).  The Kolstad

6   "good faith" defense requires that an employer not only adopt an anti-discrimination policy, but

7   also implement the policy in good faith.  Passantino, 212 F.3d at 517.

8   
9       Abercrombie's good faith efforts to comply with Title VII foreclose the possibility of

10  punitive damages in this case.  See Kolstad, 527 U.S. at 528.  Abercrombie maintains anti-

11  discrimination and harassment policies, and frequently trains its managers and employees on

12  these policies as well as on diversity and equal employment opportunity topics.  (Riley Dep 59,

13  62-63, 100; Canasa Dep. 146-148).  Abercrombie's Interview Guide was prepared by an outside

14  expert, and Canasa testified that she was trained to follow the Interview Guide to create consistent

15  interviews, avoid improper inquiries, and "give an equal opportunity [to] everybody who is

16  applying for a position in the store."  (Canasa Dep. 43, 68-69, 158-159; Riley Dep. 64-66).

17  Canasa was trained, and understood, that an applicant's religion should not be discussed during

18  an interview, and that discrimination on the basis of religion is prohibited by law.  (Canasa Dep.

19  132, 160, 165-166, 212-213; Lundquist Dep. 129-130).  Abercrombie's Human Resources

20  department maintains a comprehensive process for addressing requests for religious and other

21  accommodations and addressing concerns regarding potential discrimination. (Riley Dep. 102-

22  106, 112).  It is undisputed that Banafa never contacted Abercrombie with any complaints or

23  concerns regarding discrimination. (Banafa Dep. 124-125).

24      Punitive damages are inappropriate here because there is no evidence that Abercrombie

25  acted with malice or reckless indifference with regard to Banafa's federal rights, and because

Abercrombie maintains and implements its non-discrimination policies in good faith.

Accordingly, even if the Court were to deny Abercrombie's motion for summary judgment with

regard to liability, the EEOC's claim for punitive damages still fails as a matter of law.   See, e.g.,

Kirbyson v. Tesoro Ref. & Mktg. Co., 795 F. Supp. 2d 930, 947-48 (N.D. Cal. 2011) (granting

defendant's motion for summary judgment on plaintiff's punitive damages claim where it found

"no evidence that could lead a reasonable jury to conclude that [the defendant] acted with malice

or reckless indifference to [the plaintiff's] rights").

## VIII.   CONCLUSION

Based on the foregoing facts and authorities, the Court should enter summary judgment

in favor of Abercrombie on the EEOC's claims in their entirety.

Dated:   August 13, 2012                        Respectfully submitted,

                                                /s/Mark A. Knueve
                                                Mark A. Knueve (Ohio Bar No. 0067074)
                                                Daniel J. Clark (Ohio Bar No. 0075125)
                                                Samantha A. Stilp (Ohio Bar No. 0086907)
                                                VORYS, SATER, SEYMOUR AND PEASE LLP
                                                52 East Gay Street
                                                P.O. Box 1008
                                                Columbus, Ohio 43216-1008
                                                Telephone: (614) 464-6387
                                                Facsimile: (614) 719-4808
                                                E-mail: maknueve@vorys.com
                                                E-mail: djclark@vorys.com
                                                E-mail: sastilp@vorys.com

                                                *Admitted pro hac vice*

                                                Douglas E. Dexter, SBN 115868
                                                FARELLA BRAUN + MARTEL LLP
                                                235 Montgomery Street, 17th Floor
                                                San Francisco, CA 94104
                                                Telephone: (415) 954-4400
                                                Facsimile: (415) 954-4480
                                                E-mail: ddexter@fbm.com

                                                Attorneys for Defendant
                                                ABERCROMBIE & FITCH STORES, INC.
                                                d/b/a ABERCROMBIE KIDS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing Defendant's Notice of Motion and Motion for Summary Judgment or, Alternatively, Summary Adjudication, has been electronically filed with the Clerk of the Court through the CM/ECF system, which will send notice of electronic filing to the CM/ECF participants on this 13th day of August 2012.

/s/Samantha A. Stilp
Samantha A. Stilp