United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Case No.: 5:10-CV-03911-EJD |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ABERCROMBIE & FITCH STORES, INC. dba ABERCROMBIE KIDS, | |
| Defendant. | **[Re: Docket Nos. 75, 80]** |

Presently before the court in this employment discrimination action are the parties' cross motions for summary judgment. Defendant Abercrombie & Fitch Stores, Inc. ("Abercrombie") moves for summary judgment, or alternatively, summary adjudication as to Plaintiff U.S. Equal Employment Opportunity Commission's ("the EEOC") prima facie case and its claims for injunctive relief and punitive damages. Dkt. No. 75. The EEOC in turn moves for summary adjudication as to Abercrombie's fourth, fifth, sixth, eighth, and tenth affirmative defenses. On September 28, 2012 the court heard argument on these motions. Having reviewed the parties' briefing and heard the parties' arguments, the court GRANTS the EEOC's Motion for Partial Summary Judgment and DENIES Abercrombie's Motion for Summary Judgment for the reasons set forth below.

## I. BACKGROUND

On September 1, 2010, the EEOC filed this action on behalf of Ms. Halla Banafa against Abercrombie alleging religious discrimination in Abercrombie's hiring practices in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Civil Rights Act of 1991.  Dkt. No. 1.  Ms. Banafa is a Muslim teenager who applied to work as a Part-time Impact Associate ("PTI") at Abercrombie in Milpitas, California on March 7, 2008.  Ms. Banafa wore an Islamic head scarf (hijab) to her interview, which took place on March 14, 2008.  Though she received a passing score, Ms. Banafa did not receive a job offer.  The EEOC alleges that Abercrombie refused to hire Ms. Banafa in violation of Title VII because Abercrombie determined Ms. Banafa's hijab to be inconsistent with the "Abercrombie look."

### a.  Halla Banafa

Ms. Halla Banafa was raised in a Muslim family and has been a practicing Muslim since birth.  Declaration of Halla Banafa ISO Pl. Opp'n ("Banafa Decl."), Dkt. No. 87, at ¶¶ 5-6.  She believes that Islam dictates the type of clothing she should wear, including wearing a hijab while in public.  Id. at ¶ 10.  She began wearing a hijab in public when she was 11 or 12 years old ( id. at ¶ 10) and wears clothes she considers modest: primarily jeans, hooded sweatshirts, and t-shirts ( id. at ¶¶ 10, 13).  Prior to her interview, Ms. Banafa was an Abercrombie customer who purchased Abercrombie jeans, sweatshirts, and t-shirts.  Id. at ¶ 13.

Ms. Banafa never held a job prior to applying to Abercrombie.  Declaration of Samantha Stilp ISO Def. MSJ ("Stilp Decl. 1"), Dkt. No. 76, Ex. B at 64:1-3, 103:4-15.  Ms. Banafa interviewed at Starbucks and FedEx prior to interviewing with Abercrombie, but was not offered either of those jobs.  Declaration of Samantha Stilp ISO Def. Opp'n ("Stilp Decl. 2"), Dkt. No. 96, Ex. B at 73:11-17, 74:24-75:10.  Following her interview with Abercrombie, Ms. Banafa discontinued her job search for approximately five months.  In July 2008, Ms. Banafa got married and moved to South Carolina.  Id. at 171:16-24.  After her move, Ms. Banafa stopped wearing the hijab.  Stilp Decl. 1 Ex. B at 21-22, 24, 51.  She applied to work at an Olive Garden restaurant in

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

South Carolina, was offered the job, and still worked there at the time of her deposition.  Stilp Decl. 2 Ex. B at 41:12-23, 66:15-17.

### b. Abercrombie & Fitch

Abercrombie operates retail stores across the United States under the brand names Abercrombie & Fitch, Hollister, abercrombie kids, and Gilly Hicks.  The Great Mall in Milpitas, California is home to three Abercrombie stores: Abercrombie & Fitch, Hollister, and abercrombie kids.  Declaration of Marcia Mitchell ISO Pl. MSJ ("Mitchell Decl. 1"), Dkt. No. 81, Ex. 2 at 10:15-11:5.  Abercrombie refers to its sales associates as "Models."  Id. at 19:2-5.  Models work on the sales floor and are required to wear Abercrombie-style clothing to exemplify the Abercrombie look to customers.  Stilp Decl. 2 Ex. C at 72:17-73; Ex. E at 100:2-5.  Employees who work in the stock room are called "Impact" or "PTI" associates.  Stilp Decl. 2 Ex. E at 34:16-21.  PTIs are required to wear the Abercrombie style but their primary function is not to model the style.  Stilp Decl. 2 Ex. C at 161:12-14; Ex. E at 34:16-24, 52:3-13.  In 2008 Abercrombie employed between 200,000 to 250,000 part-time employees, 90,000 to 120,000 of whom worked as PTIs and 70,000 to 100,000 of whom worked as models.  Mitchell Decl. 1 Ex. 1 at17:2-19.

The Abercrombie brand exemplifies an East Coast collegiate style described as "casual" and "preppy."  Stilp Decl. 2 Ex. E at 94:20-95:14, 155:7-22.  Abercrombie promotes its products through its in-store experience, and uses virtually no television, print, or radio advertising.  Stilp Decl. 2 Ex. L; Ex. E at 138:10-22.  It makes great efforts to ensure all the senses in the store are consistent with its brand.  Stilp Decl. 2 Ex. C at 130:7-24.  Abercrombie's goal is to provide its target customers with an in-store experience that perfectly matches Abercrombie's vision of the brand, and inspires customers to adopt the Abercrombie style and purchase clothing from the store. Stilp Decl. 2 Ex. C at 31:13-24; Ex. E at 198:1-4; Ex. I at 45:10-46:2.  Abercrombie believes its customers are brand savvy and will depend on the employees' modeling the brand.  Stilp Decl. 2 Ex. I at 45:10-46:2.  Abercrombie asserts that these efforts provide it with a competitive edge over other retailers that use traditional means of advertising.  Stilp Decl. 2 Ex. C at 130:7-24.

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

### i. Abercrombie's Look Policy

In keeping with its marketing strategy, Abercrombie maintains a "Look Policy" that gives employees guidelines regarding the clothing they are expected to wear while working.  Mitchell Decl. 1 Ex. 3 at 135:16-25.  All employees in Abercrombie & Fitch, Hollister, and abercrombie kids stores are required to abide by the Look Policy.  Mitchell Decl. 1 Ex. 1 at 18:2-17.  The policy requires employees to wear clothes similar to Abercrombie's core style, but employees are not required to wear Abercrombie clothing.  Mitchell Decl. 1 Ex. 3 at 202:4-8; Ex. 5.  The Look Policy requires employees to wear specific types of shoes, such as flip flops, Converse sneakers, or Vans sneakers.  Mitchell Decl. 1 Ex. 3 at 136:11-137:9.  In 2008, the Look Policy prohibited employees from wearing "caps," but according to Abercrombie, this prohibition included all forms of headwear. Mitchell Decl. 1 Ex. 4 at 6.  It also prohibits piercings, fingernail paint, and heavy makeup.  Stilp Decl. 1 Ex. A at 46:15-23.  Additionally, the Look Policy prohibited facial hair, certain types of jewelry, and clothing that displayed non-Abercrombie logos.  Mitchell Decl. 1 Ex. 4 at 6.

Abercrombie has made at least seventy exceptions to its Look Policy since 2006.  Mitchell Decl. 1 Ex. 12.  Abercrombie makes these exceptions on a case-by-case basis after examining all the circumstances, including the position of the employee making the request, the size of the store, the accommodation requested, and other factors.  Stilp Decl. 2 Ex. C at 115:10-22, 161:3-162:2, 168:10-22, 196:21-197:22, 232:1-23.  According to Abercrombie, the vast majority of the exceptions it granted were not noticeable and did not distract from the Abercrombie style.  Stilp Decl. 2 Ex. C at 162:7-163:23.  Such exceptions included religious accommodations for nose piercings, if the piercings were covered or replaced by a clear spacer, a small necklace if the necklace was not noticeable, and facial hair if it was kept closely groomed.  Id.  Several exceptions to the Look Policy's headwear prohibition have also been made, and since 2010, Abercrombie has provided religious accommodations for hijabs on a case-by-case basis.  See Mitchell Decl. 1 Ex. 12; Stilp Decl. 2 Ex. C at 102:1-16.

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

### ii.  Abercrombie's Interview Protocol

To standardize its interview process, Abercrombie uses a "People Selection Program," in which all managers are trained.  The People Selection Program provides a script called the "Interview Guide."  Stilp Decl. 1 Ex. C at 64:24-66:16.  Managers are trained to follow the Interview Guide closely and not ask questions outside what is included in the guide, such as questions about the applicant's religion.  Stilp Decl. 1 Ex. A at 43:4-14; Ex. C at 65:13-66:9, 105:7-24.  If questions regarding religion or religious accommodations arise, the interviewing manager is instructed to contact Human Resources.  Stilp Decl. 1 Ex. C at 105:7-24.  At the end of the interview, the interviewing manager is required to identify a numerical score for each candidate.  See id. at 89:8-15.  A score of six or higher is considered to meet expectations and result in recommendation for hire.  Id.  However, a store need not hire every applicant who receives a score of six or higher.  Stilp Decl. 1 Ex. F at 127:10-23.

### c.  Ms. Banafa's Interview with Abercrombie

On March 7, 2008, Ms. Banafa applied for a PTI position in the Great Mall in Milpitas, California.  Banafa Decl. ¶ 14.  On March 14, 2008, Ms. Janet Canasa, an Abercrombie Manager-In-Training ("MIT"), interviewed Ms. Banafa for the position.  Mitchell Decl. 1 Ex. 4 at 15.  Ms. Canasa had worked for Abercrombie less than one month prior to interviewing Ms. Banafa, but had full authority to interview candidates and offer them jobs without consulting a more senior manager.  Mitchell Decl. 1 Ex. 6 at 33:19-34:2, 123:5-7; Ex. 4 at 15; Ex. 3 at 104:24-105:6.  Ms. Canasa claims she completed the required interview training prior to interviewing Ms. Banafa.  Mitchell Decl. 1 Ex. 6 at 61:24-62:2, 155:8.  Ms. Canasa was expected to follow the Abercrombie script for interviewing, and was prohibited from asking "illegal" questions, such as questions regarding religion.  Mitchell Decl. 1 Ex. 3 at 65:8-66:6, 70:2-6, 81:17-82:1; Ex. 7 at 123:10-125:1, 129:13-21.

During her interview with Abercrombie, Ms. Banafa wore a hijab.  Mitchell Decl. 1 Ex. 4 at 15; Banafa Decl. ¶ 14.  She also wore a turtleneck, red nail polish, and a nose ring, all of which are inconsistent with the Look Policy.  Stilp Decl. 1 Ex. B at 109:4-111:25.  The parties dispute the

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    exchange that took place between Ms. Banafa and Ms. Canasa during the interview.  The court

2    recounts each version briefly.

3              According to the EEOC, Ms. Canasa asked Ms. Banafa towards the beginning of the

4    interview, "you're Muslim, right?" and Ms. Banafa confirmed that she was Muslim.  Banafa Decl.

5    ¶ 14.  Ms. Canasa replied, "I thought so because of your…" while moving her hands around her

6    head, referring to Ms. Banafa's hijab.  Id.  Ms. Canasa then asked whether Ms. Banafa was

7    required to wear a hijab and Ms. Banafa explained she was.  Id.  At the end of the interview, Ms.

8    Canasa reviewed Abercrombie's policies with Ms. Banafa, including an abbreviated version of the

9    Look Policy.  Mitchell Decl. 1 Ex. 6 at 64:2-22, 90:18-91; Ex. 20.  Ms. Banafa asked whether her

10   head scarf would be a problem.  Mitchell Decl. 1 Ex. 21.  Ms. Canasa told Ms. Banafa that she did

11   not believe it would be a problem, but needed to confirm with the Abercrombie district manager.

12   Mitchell Decl. 1 Ex. 6 at 126:19-127:18.  Ms. Canasa took notes summarizing the interview and

13   recorded that Ms. Banafa was not "Abercrombie look."  Notwithstanding this note, Ms. Canasa

14   gave Ms. Banafa a score of 7, a score high enough to recommend her for hire.  See id. at 90:4-6,

15   95:16-96:18.  Ms. Canasa did not offer Ms. Banafa the job, nor did she consult with anybody about

16   her rejection or Ms. Banafa's question regarding her hijab.  Mitchell Decl. 1 Ex. 4 at 16; Ex. 6 at

17   92:10-24.  Further, Ms. Canasa did not ask Ms. Banafa whether she could wear an alternative style

18   of hijab or wear one in Abercrombie's core colors of blue, grey, or white.  Banafa Decl. ¶ 15.

19             According to Abercrombie, after discussing diversity and Abercrombie's "appearance

20   policy," Ms. Canasa asked if Ms. Banafa was Muslim and if she had to wear a head scarf.  Stilp

21   Decl. 1 Ex. B at 116:2-117:3.  Ms. Canasa also stated that she knew Muslims who did not wear

22   hijabs.  Id. at 117:3-5.  Later in the interview, Ms. Canasa discussed the dress and grooming

23   policies and informed Ms. Banafa that she could not wear a turtleneck in the summer and that her

24   red nail polish and nose ring were inconsistent with the Look Policy.  Id. at 117:14-118:17.

25   According to Abercrombie, Ms. Banafa was quiet, not enthusiastic, not energetic, and not very

26   outgoing.  Stilp Decl. 1 Ex. A at 87:9-25, 89:1-24.  However, Ms. Canasa gave Ms. Banafa an

27   interview score of 7, which is high enough to be eligible for hire.  Id. at 96:6-11.  Following the

28

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    interview, Ms. Canasa reviewed Ms. Banafa's availability.  Id. at 98:17-18; Ex. G at ¶ 13.  Ms.

2    Banafa indicated she was not available Monday through Thursday.  Stilp Decl. 1 Ex. B at Banafa

3    Dep. Ex. 2.  Due to her limited availability and it being the retail "low season," Ms. Banafa was not

4    hired.  Stilp Decl. 1 Ex. A at 60:15-61:8, 98:17-20; Ex. B at Banafa Dep. Ex. 2; Ex. G at ¶ 13.

5              **d.  Comparators**

6         Employment applications are active for thirty days.  Declaration of Sirithon Thanasombat

7    ("Thanasombat Decl."), Dkt. No. 91, Ex. 8 at 94:10-15.  Thus, for purposes of establishing any

8    comparators to Ms. Banafa, the relevant time period is thirty days from the date of Ms. Banafa's

9    application, i.e. thirty days from March 7, 2008.  During the relevant time period, the abercrombie

10   kids store ("kids store") in Milpitas hired three PTIs: Jessica Baron, Argenis Lopez, and Kirk

11   Saechao.  Stilp Decl. 1 Ex. G at ¶ 15.  All three applicants had better availability and the same or

12   higher scores than Ms. Banafa.  Id. at ¶¶ 17-19.  The Abercrombie & Fitch adult store ("adult

13   store") hired twelve PTIs during the relevant time period.  Three of these candidates, Gregory

14   Lopez, Lindsay Royola, and Andy Sim, scored lower than Ms. Banafa on their interviews.  Stilp

15   Decl. 1 Ex. A at 96:6-11; Thanasombat Decl. Exs. 21-23. The parties dispute which store Ms.

16   Banafa applied to, and which store considered Ms. Banafa's application.

17   **II.  LEGAL STANDARD**

18        A motion for summary judgment should be granted if "there is no genuine dispute as to any

19   material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a);

20   Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the

21   initial burden of informing the court of the basis for the motion and identifying the portions of the

22   pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the

23   absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

24        If the moving party does not satisfy its initial burden, the nonmoving party has no

25   obligation to produce anything and summary judgment must be denied.  Nissan Fire & Marine Ins.

26   Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102–03 (9th Cir. 2000).  On the other hand, if the

27   moving party does meet this initial burden, the burden then shifts to the nonmoving party to go

28

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."

Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The court must regard as true the opposing party's

evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324.

However, the mere suggestion that facts are in controversy, as well as conclusory or speculative

testimony in affidavits and moving papers, is not sufficient to defeat summary judgment.  See

Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Instead, the non-moving

party must come forward with admissible evidence to satisfy the burden.  Fed. R. Civ. P. 56(c); see

also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

Where the moving party will have the burden of proof on an issue at trial, it must

affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

party.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  However, where the

nonmoving party will have the burden of proof at trial on a particular issue, the moving party need

only point out "that there is an absence of evidence to support the nonmoving party's case."

Celotex, 477 U.S. at 325.  Provided there has been adequate time for discovery, summary judgment

should be entered against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at

trial.  Id. at 322–23. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

### III. DISCUSSION

### a. Abercrombie's Motion for Summary Judgment

Title VII makes it an "unlawful employment practice for an employer to fail or refuse to

hire or to discharge any individual, or otherwise to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges or employment, because of such

individual's…religion." 42 U.S.C. § 2000e-2.  The EEOC alleges claims of disparate treatment and

failure to accommodate under Title VII, as well as claims for injunctive relief and punitive

damages.  Abercrombie moves for summary judgment as to each of these claims.

8

United States District Court
For the Northern District of California

### i.  Disparate Treatment

A plaintiff's Title VII disparate treatment claim must be analyzed through the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  To establish a <u>prima facie</u> case of disparate treatment under that framework, the EEOC must show that: (1) Ms. Banafa belongs to a protected class; (2) Ms. Banafa applied for and was qualified for a job for which the employer was seeking applicants; (3) Ms. Banafa was rejected from employment; and (4) similarly situated individuals outside of Ms. Banafa's protected class were treated more favorably, or other circumstances surrounding the adverse employment action existed which give rise to an inference of discrimination.  <u>Peterson v. Hewlett Packard</u>, 358 F.3d 599, 603 (9th Cir. 2004).   If the EEOC establishes this <u>prima facie</u> case, the burden shifts to Abercrombie to articulate a legitimate, non-discriminatory reason for the adverse employment action.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802.  If Abercrombie establishes such a non-discriminatory reason, the burden shifts back to the EEOC to prove that the proffered reason is merely "pretext" for discrimination.  <u>Id.</u>

### A.  The EEOC's Prima Facie Case

The parties only dispute whether the EEOC has met its burden to establish the fourth prong of the <u>McDonnell Douglas</u> test.  To successfully establish this fourth prong, the EEOC must show that applicants who were not Muslim but who otherwise were similarly situated to Ms. Banafa were treated more favorably.  <u>Moran v. Selig</u>, 447 F.3d 748, 755 (9th Cir. 2006).  The other candidates need not be "identical" to Ms. Banafa, but must be "situated…in all material respects." <u>Earl v. Nielsen Media Research, Inc.</u>, 658 F.3d 1108, 1115 (9th Cir. 2011) (citing <u>Hawn v. Exec. Jet Mgmt., Inc.</u>, 615 F.3d 1151, 1157 (9th Cir. 2010)); <u>Moran</u>, 447 F.3d at 755 (9th Cir. 2006). "Whether two employees are similarly situated is ordinarily a question of fact." <u>Beck v. United Food & Commercial Workers Union Local 99</u>, 506 F.3d 874, 885 n. 5 (9th Cir. 2007).

Abercrombie argues that the EEOC has not and cannot establish that any similarly situated individual was treated more favorably than Ms. Banafa because no similarly situated individual was even considered during the relevant time period.  Particularly, Abercrombie contends that the

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  EEOC has not identified any candidate with a "similarly limited schedule and similar interview

2  score" to Ms. Banafa who was hired during the relevant time period.  Dkt. No. 75 at 16.  The only

3  three candidates hired to the Milpitas kids store during the relevant time period had the same or

4  better scores than Ms. Banafa, and significantly better availability.  Stilp Decl. 1 Ex. G ¶¶ 15-19.

5  Because these candidates had equal or better scores and better availability, Abercrombie contends

6  that they were not "similarly situated" to Ms. Banafa.  The EEOC disputes Abercrombie's reliance

7  on the kids store candidates, and contends instead that the court should look to the hiring of at least

8  three candidates with lower scores than Ms. Banafa to the Milpitas adult store during March 2008.

9  Thanasombat Decl. Exs. 21-23.

10         The court finds that the EEOC has raised a triable issue of fact as to whether Ms. Banafa

11  was similarly situated to any candidates hired by Abercrombie during the relevant period.

12  Generally, individuals are similarly situated when they have similar jobs and display similar

13  conduct.  Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).  Here, where the

14  parties do not agree even as to basic information—i.e. what store Ms. Banafa applied to and was

15  rejected from—the court cannot make a determination as to which candidates, if any, were

16  similarly situated to Ms. Banafa.   Under these circumstances, summary judgment as to the

17  EEOC's prima facie case would be inappropriate.

18              **B.  Abercrombie's Legitimate, Non-Discriminatory Justification**

19         Abercrombie next argues that even if the EEOC were to establish a prima facie case,

20  Abercrombie is nonetheless entitled to summary judgment as to the disparate treatment claim

21  because it has come forward with a legitimate non-discriminatory reason for its decision to not hire

22  Ms. Banafa.   To meet its burden, Abercrombie need not "persuade the court that it was actually

23  motivated by the proffered reasons."  Casillas v. United States Navy, 735 F.2d 338, 343 (9th Cir.

24  1984) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  Rather,

25  Abercrombie must simply "present evidence raising a genuine issue" as to whether Ms. Banafa

26  "was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason."  Id.

27  (internal citation omitted).

28
                                        10
Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

During the retail "low season," Abercrombie argues, hiring managers must take into account the store's needs and candidates' availability when making hiring decisions.  Stilp Decl. 1 Ex. G at ¶¶ 7, 9; Ex. A at 52:12-14.  Ms. Banafa applied to Abercrombie in March, which is considered "low season" in the retail industry.  Id.  When Ms. Canasa considered Ms. Banafa's application, Ms. Canasa discovered that Ms. Banafa was only available to work Friday, Saturday, and Sunday.  Stilp Decl. 1 Ex. B, Banafa Dep. Ex. 2.  Abercrombie argues that Ms. Canasa found Ms. Banafa's availability to be "particularly problematic" in light of the low season, and consequently Ms. Canasa refused to hire Ms. Banafa.  Dkt. No. 75 at 17; see Stilp Decl. 1 Ex. G at ¶¶ 6, 9-10.  This reason and the evidence Abercrombie offers in support of it suffices to meet Abercrombie's burden.

### C.  Pretext

Having satisfied its burden to supply a reasonable, non-discriminatory justification for its failure to hire Ms. Banafa, Abercrombie next argues that, notwithstanding the presence of any triable issues of fact on the prima facie case, it is entitled to summary judgment as to the EEOC's disparate treatment claim because the EEOC has failed to show that Abercrombie acted with discriminatory animus or that its proffered reason is merely pretext.  See Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1196 (9th Cir. 2003).  The EEOC "can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer."  Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000) (internal citation omitted).  A combination of these two approaches may also be used to establish pretext for purposes of summary judgment.  Id.  At this stage in the proceedings, the EEOC need only produce "'very little' direct evidence of the employer's discriminatory intent."  Id. at 1128 (internal citations omitted).  However, if circumstantial evidence is offered, it must be "specific and substantial."  Godwin v. Hunt Wesson,  Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (internal citations omitted); see Dep't of Fair Emp't & Hous. v. Lucent Tech., Inc., 642 F.3d 728, 746 (9th Cir. 2011) ("the

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence ... and hence infer that the employer did not act for the ... non-discriminatory reasons") (internal citations omitted).

The EEOC argues that the Look Policy, the circumstances surrounding the interview, the adult store's hiring considerations and the hiring of less-qualified comparators, when taken together, generate a question of material fact as to whether Abercrombie's availability justification is pretextual. Additionally, the EEOC presses the court to find that the shifting justifications offered by Ms. Canasa create a question of material fact as to her credibility, and thus as to Abercrombie's justification. Abercrombie responds that availability is a legitimate consideration, and that Ms. Canasa's explanation has not shifted.

At the time of Ms. Banafa's interview, the Look Policy expressly prohibited employees from wearing caps or other headwear. Thanasombat Decl. Ex. 5 at 141:4-11. Ms. Canasa had recently been trained on the importance of employees' maintaining the Abercrombie Look, and knew that headwear was not a part of that look. See Thanasombat Decl. Ex. 8 at 123:19-124:24, 125:19-127:4. Ms. Banafa arrived to her interview wearing a hijab. Banafa Decl. ¶ 14. During the interview, Ms. Canasa asked Ms. Banafa whether she was Muslim, and asked if Ms. Banafa was required to wear her hijab. Id. This evidence suggests that Ms. Banafa's religion was at least considered during the interview.

As discussed in Section III.A, the parties dispute whether Ms. Banafa applied to Abercrombie's adult store or kids store. To support its position, the EEOC submits Ms. Banafa's employment application, which contains, inter alia, the following questions and responses:

| | |
|---|---|
| **Application submitted at:** | Abercrombie & Fitch Store 955 |
| **Name of the mall:** | Great Mall Milpitas Outlet |
| **Application submitted for brand:** | Abercrombie & Fitch |

Thanasombat Decl. Ex. 30

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Considering this evidence and drawing inferences in favor of the nonmovant the EEOC, the jury will likely conclude that Ms. Banafa applied to the adult store.  Abercrombie's hiring policy was to hire candidates who received passing scores, and if the store had a pool of candidates with passing scores, to hire the candidate with the highest score.  Thanasombat Decl. Ex. 8 at 164:12-165:7.  Ms. Banafa received a score of 7, yet the adult store hired three candidates having the score of 6 during the relevant period.  Stilp Decl. 1 Ex. A at 96:6-11; Thanasombat Decl. Exs. 21-23.  While Abercrombie justifies this hiring decision with Ms. Banafa's limited availability, several Abercrombie employees have testified that availability is not a consideration for hiring in the adult store and that Abercrombie uses more PTIs on the weekends.  Thanasombat Decl. Ex. 2 at 40:15-41:4, 65:8-66:4; Ex. 6 at 144:1-145:6.

The court finds that the EEOC has supplied sufficient evidence to show a genuine question of material fact as to the validity of Abercrombie's justification.  A reasonable jury considering the evidence suggesting that availability was not typically a hiring consideration and showing that three candidates with lower scores were hired over Ms. Banafa could conclude that Abercrombie's availability justification is a thinly veiled excuse cloaking the true motivation behind its decision not to hire Ms. Banafa.  Taken in combination with the evidence that Ms. Banafa's religion and her wearing of the hijab were addressed during the interview, a reasonable jury may further infer that Abercrombie's motivation was a discriminatory one.

Over and above this evidence, the EEOC has also presented evidence sufficient to show a question of material fact as to the credibility of Ms. Canasa, i.e., Abercrombie's key witness.  The EEOC has supplied evidence of several inconsistencies, perhaps the most important of which shows that Ms. Canasa likely changed her stated reason for not hiring Ms. Banafa mid-way through this litigation.  Ms. Canasa first conveyed her account of Ms. Banafa's interview and the subsequent hiring determination in July 2008—four months after the incident—in a sworn declaration to the EEOC.  Thanasombat Decl. Ex. 25.  In that declaration, Ms. Canasa briefly stated that Ms. Banafa "was not hired because she was not the most qualified."  Id. at ¶ 5.  Two weeks later Ms. Canasa submitted a supplemental declaration, but did not supplement her justification for

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   the hiring decision.  Thanasombat Decl. Ex. 8 at 193:4-12.  In a letter responding to the EEOC's

2   request for additional information, Abercrombie's counsel reiterated that Ms. Canasa said she did

3   not hire Ms. Banafa because "she was not sufficiently outgoing and engaging."  Thanasombat

4   Decl. Ex. 26.  Two years later, Ms. Canasa maintained this justification, explaining to the EEOC's

5   investigator that she did not hire Ms. Banafa "because she was not very outgoing, confident."

6   Thanasombat Decl. Ex. 24.  Despite numerous opportunities, Ms. Canasa did not mention Ms.

7   Banafa's availability in any of these communications with the EEOC.  However, four years later,

8   during the course of this litigation, Ms. Canasa remembered during a deposition that she had not

9   hired Ms. Banafa due to her limited availability.  Thanasombat Decl. Ex. 8 at 60:10-21, 194:13-

10  195:8. Abercrombie contests the EEOC's assertion that Ms. Canasa only recently raised

11  availability as the reason for Ms. Banafa's rejection, but offers no evidence supporting this

12  argument.

13          The EEOC has submitted sufficient evidence to generate a question of material fact as to

14  whether Ms. Canasa's justification has shifted and what import that change may carry.  The court

15  thus finds that a reasonable jury may doubt Ms. Canasa's credibility and, by extension,

16  Abercrombie's proffered justification for its decision to not hire Ms. Banafa.  Accordingly,

17  Abercrombie's Motion for Summary Judgment as to the disparate treatment claim is DENIED.

18                          **ii.  Failure to Accommodate**

19          Abercrombie next contends that it is entitled to summary judgment as to the EEOC's failure

20  to accommodate claim.  To establish a prima facie case of religious discrimination on the basis of a

21  failure to accommodate, the EEOC must show that (1) Ms. Banafa had a bona fide religious belief,

22  the practice of which conflicts with an employment duty; (2) Ms. Banafa informed Abercrombie of

23  the belief and conflict; and (3) Abercrombie subjected her to an adverse employment action

24  because of her inability to fulfill the job requirement.  Peterson, 358 F.3d at 606 (citing Heller v.

25  EBB Auto. Co., 8 F.3d 1433, 1438 (9th Cir. 1993)).  If the EEOC successfully satisfies this test, the

26  burden shifts to Abercrombie to show that it "initiated good faith efforts to accommodate

27  reasonably the employee's religious practices or that it could not reasonably accommodate the

28
                                              14

1    employee without undue hardship." Peterson, 358 F.3d at 606 (quoting Tiano v. Dillard Dep't

2    Stores, Inc., 139 F.3d 679, 681 (9th Cir. 1998)).

3          Abercrombie contends that the EEOC has failed to establish the third prong of its prima

4    facie case because the EEOC has not shown Ms. Banafa was subjected to an adverse employment

5    action because of her inability to fulfill a job requirement in conflict with her religious belief.

6    Abercrombie submits Ms. Canasa's testimony, in which she states she did not consider Ms.

7    Banafa's hijab in making the hiring decision and in fact determined that Ms. Banafa was eligible

8    for hire after her interview, to suggest that Ms. Banafa's religious beliefs did not contribute to

9    Abercrombie's hiring decision. Stilp Decl. 1 Ex. A at 94-96. Further, Abercrombie offers

10   evidence to show that Ms. Canasa ultimately decided not to hire Ms. Banafa because of her limited

11   availability. Stilp Decl. 1 Ex. G at ¶13, Ex. A at 49, 61-62, 92-93, 96-98.

12         Once again, Abercrombie's argument hinges on the credibility of Ms. Canasa and nothing

13   else. As discussed in the previous section, Ms. Canasa asked Ms. Banafa if she was Muslim, and

14   asked if Ms. Banafa could remove her hijab. As a relatively new employee, Ms. Canasa had

15   recently been trained in the Look Policy and knew that the policy prohibited headwear of any form.

16   Moreover, Ms. Canasa wrote "not Abercrombie Look" in her interview notes, along with another

17   note, now scribbled out, which the EEOC contends resembles "head gear." Thanasombat Decl. Ex.

18   16. In light of this evidence, the court finds material questions of fact as to Ms. Canasa's

19   credibility and motivation for not hiring Ms. Banafa. Ms. Canasa's statement that she considered

20   Ms. Banafa's availability, but not her hijab, in making the hiring decision is thus insufficient to

21   warrant summary judgment in favor of Abercrombie on this claim and that request is DENIED.

22                              **iii. Injunctive Relief**

23         Abercrombie argues that it is entitled to summary judgment as to the EEOC's claim for

24   injunctive relief because the EEOC has not shown a cognizable danger that the injury will be

25   repeated and because the EEOC's request is overbroad. The purpose of an injunction is to prevent

26   future unlawful conduct. EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1543 (9th Cir.

27   1987). Where, as here, the defendant has allegedly ceased the conduct complained of, "the court's

28

                                                   15

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    power to grant injunctive relief survives discontinuance of the illegal conduct." United States v.

2    W.T. Grant Co., 345 U.S. 629, 633 (1953).  However, the party requesting injunctive relief has the

3    burden to "satisfy the court that relief is needed."  Id.  "The necessary determination is that there

4    exists some cognizable danger of recurrent violation, something more than the mere possibility

5    which serves to keep the case alive."  Id.

6          Abercrombie has submitted evidence showing that its managers are trained on religious

7    discrimination issues and that it now provides accommodations to employees who wear hijabs for

8    religious reasons.  Stilp Decl. 1 Ex. A at 146-48, Ex. 23; Ex. C at 100, 170, 186, 281.  In response,

9    the EEOC first presents evidence suggesting that this training may be insufficient.  For instance,

10   Abercrombie managers Mr. Chapa and Mr. Otis testified they could not recall whether they

11   received religious discrimination training.  Thanasombat Decl. Ex. 2 at 11:9-12:18; Ex. 6 at 48:24-

12   51:1, 152:9-153:1.  Second, the EEOC points out that Abercrombie still employs Ms. Canasa in a

13   position with hiring authority.  Thanasombat Decl. Ex. 8 at 138:7-139:14.  Third, the EEOC argues

14   that regardless of the strength of any training programs it offers, Abercrombie may choose to revert

15   to its previous accommodation policy at any time in the absence of an injunction because it

16   vigorously maintains it has a legal right to do so.  See Dkt. No. 75 at 23 (in which Abercrombie

17   maintains it has not violated Title VII); Thanasombat Decl. Ex. 29 (notice of appeal filed in a

18   separate case entitled EEOC v. Abercrombie & Fitch Stores, Inc., No. 09-CV-602 (N.D. Ok. 2011),

19   which found Abercrombie failed to prove an undue burden in allowing employees to wear hijabs);

20   Ex. 33 at 101:20-102:16 (stating that Abercrombie has changed its accommodation policy because

21   of "the distraction of the litigation around hijabs").

22          While Abercrombie's efforts are commendable, they are insufficient to warrant summary

23   judgment as to the EEOC's claim for injunctive relief.  See U.S. v. City & County of San

24   Francisco, 656 F. Supp. 276, 286-88 (N.D. Cal. 1987) (finding that despite the defendant city's

25   "abandon[ment of] its long and arduous defense of [the allegedly discriminatory practices]…[that

26   abandonment] in no way suggests that the City has now immunized itself from the future use of

27   discriminatory hiring practices").  At this stage in the proceedings, Abercrombie's liability remains

28

                                          16

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   an open question.  The answer to the questions of fact underlying the ultimate liability

2   determination may prove crucial to the court's determination of injunctive relief.  For instance, if

3   the jury determines that Abercrombie has intentionally discriminated against Ms. Banafa because

4   of her religion, the sufficiency of Abercrombie's training on religious discrimination and

5   accommodation issues may be called into question.  Such a finding would also cast into doubt the

6   permanence of Abercrombie's change in policy to allow Muslim employees to wear hijabs.  See,

7   e.g. Goodyear, 813 F.2d at 1544 ("an employer that takes curative actions only after it has been

8   sued fails to provide sufficient assurances that it will not repeat the violation to justify denying an

9   injunction.").

10      Abercrombie's argument that any injunction against it would be overbroad is also

11  premature.  District courts have "considerable discretion in fashioning suitable relief and defining

12  the terms of an injunction," but that discretion is not unbounded.  Lamb-Weston, Inc. v. McCain

13  Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991).  The court notes that any injunction ultimately

14  issued against Abercrombie must be "tailored to remedy the specific harm alleged."  Id.  However,

15  because no harm has yet been shown in this case, the court simply cannot make a determination as

16  to the availability and scope of any injunction at this time.

17              **iv.   Punitive Damages**

18      Finally, Abercrombie argues that it is entitled to summary judgment as to the EEOC's claim

19  for punitive damages because the EEOC has not supplied evidence of the requisite intent and

20  because any behavior on the part of Ms. Canasa cannot be imputed to Abercrombie.  To recover

21  punitive damages, a Title VII plaintiff must show that the employer engaged in intentional

22  discrimination "with 'malice or reckless indifference to the [plaintiff's] federally protected rights.'"

23  Kolstad v. Am. Dental Ass'n, 52 U.S. 526, 534-35 (1999) (internal citation omitted).  A finding of

24  "malice" or "reckless disregard" hinges on an employer's "knowledge that it may be acting in

25  violation of federal law, not its awareness that it is engaging in discrimination."  Id. at 535.

26      Abercrombie argues that the EEOC has failed to present any evidence suggesting that it

27  acted with the requisite malice or reckless indifference toward Ms. Banafa.  To support its

28

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    contention, Abercrombie points to its anti-discrimination, diversity, and harassment policies and

2    the training it provides on these policies.  Stilp Decl. 1 Ex. A at 46-48; Ex. C at 62-63, 100.

3    Further, Abercrombie notes that its Human Resources department "maintains a comprehensive

4    process for addressing requests for religious and other accommodations and addressing concerns

5    regarding potential discrimination."  Dkt. No. 75 at 27; Stilp Decl. 1 Ex. C at 102-106.  These

6    policies and programs, Abercrombie contends, constitute good faith efforts to comply with Title

7    VII sufficient to foreclose the possibility of punitive damages.

8         Highlighting the testimony of Abercrombie managers Mr. Otis and Mr. Chapa, the EEOC

9    suggests that Abercrombie managers may have never received the training Abercrombie points to,

10   and similarly may not have been instructed as to the appropriateness of questioning an interviewee

11   on his or her religion.  Mr. Chapa testified that he was not aware of religious accommodations, but

12   that he had a "personal understanding" that questions regarding a candidate's religion should not be

13   asked during an interview.  Thanasombat Decl. Ex. 2 at 67:12-15, 68:10-16, 87:11-23.  He did not

14   attribute that understanding to any training he had received from Abercrombie.  Id. at 87:11-23.

15   Similarly, Mr. Otis testified that he personally believed questions regarding religion were

16   inappropriate, but could not say whether that belief was common to the "entire Abercrombie

17   family."  Thanasombat Decl. Ex. 6 at 120:5-22.  The EEOC maintains that this evidence shows that

18   Abercrombie's efforts, even if made in good faith, have been insufficient to prevent discrimination

19   and thus that punitive damages should remain available.

20        As discussed in the previous section, the question of whether Abercrombie engaged in

21   intentional discrimination has yet to be resolved.  At this stage, Abercrombie has not convinced the

22   court that even if a jury were to find intentional discrimination, it would nevertheless be legally

23   improper to award punitive damages.  Rather, if the jury ultimately should find intentional

24   discrimination, it must then consider the sufficiency of Abercrombie's training and its other

25   safeguards in place to prevent discrimination.  On this basis, summary judgment as to the punitive

26   damages claim is not appropriate.

27

28

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The parties also dispute whether any actions on the part of Ms. Canasa can be imputed to Abercrombie for purposes of punitive damages.  In order for punitive damages to be imputed to Abercrombie, the EEOC must show at least one of the following circumstances: (1) Abercrombie authorized the act and manner of the act; (2) Abercrombie acted recklessly in employing the agent; (3) the misconduct was committed by a "managerial employee" acting within the "scope of employment"; or (4) Abercrombie or a managerial agent ratified or approved the act.  Kolstad, 527 U.S. at 542-43.  Abercrombie contends that it trained Ms. Canasa on its interview protocol and anti-discrimination policies, and that these good faith efforts suffice to foreclose punitive damages based on Ms. Canasa's conduct.  The EEOC responds that Ms. Canasa served in a managerial capacity with full authority to hire applicants (see Thanasombat Decl. Ex. 5 at 104:24-105:6), and that Ms. Canasa had not yet participated in Abercrombie's standard 90-day Manager-in-Training program before interviewing Ms. Banafa.  Based on the evidence presented, a reasonable jury could conclude that Ms. Canasa acted as a "managerial employee," or alternatively, that Abercrombie acted recklessly in allowing Ms. Canasa to conduct the interview before she had finished her training.  Abercrombie's motion for summary judgment as to punitive damages is therefore DENIED.

**b.  The EEOC's Motion for Partial Summary Judgment**

The EEOC moves for summary adjudication as to Abercrombie's Fourth, Fifth, Sixth, Eighth, and Tenth defenses.   In its Opposition brief, Abercrombie agreed to withdraw its Fifth and Sixth defenses.  Dkt. No. 95 at 23.  Accordingly, the court DISMISSES Abercrombie's Fifth and Sixth defenses, and will only consider the parties' arguments as to the Fourth, Eighth, and Tenth defenses.

**i.  Abercrombie's Fourth Affirmative Defense: Mitigation**

The EEOC argues that it is entitled to summary judgment as to Abercrombie's Fourth Affirmative Defense of mitigation because Abecrombie has failed to establish the availability of other jobs, and because Ms. Banafa's individual circumstances rendered her decision to not pursue employment for nearly five months following her rejection from Abercrombie reasonable.  To

19

United States District Court
For the Northern District of California

succeed on its mitigation defense, Abercrombie must prove that "based on undisputed facts in the record, during the time in question there were substantially equivalent jobs available, which [Ms. Banafa] could have obtained, <u>and</u> that she failed to use reasonable diligence in seeking one." <u>EEOC v. Farmer Bros. Co.</u>, 31 F.3d 891, 906 (9th Cir. 1994) (emphasis in original). The court is not persuaded that summary judgment is warranted based on the reasonableness of Ms. Banafa's decision—such a determination is far more appropriate for the jury. However, the court must consider whether Abercrombie has met its burden of showing the availability of substantially equivalent jobs during the relevant period.

In response to the EEOC's Interrogatory No. 4, which requested all facts supporting Abercrombie's mitigation defense, Abercrombie stated that "the Part-Time Impact Associate is a minimum wage position, with virtually no benefits, which typically involves two shifts of approximately four hours per week." Mitchell Decl. 1 Ex. 19 at 23-24. While this response arguably outlines the necessary components of potential substantially equivalent jobs, Abercrombie fails to affirmatively identify any such openings. Instead, Abercrombie in its Opposition brief contends that Ms. Banafa's own testimony demonstrates that such positions were available. Dkt. No. 95 at 8. Ms. Banafa testified that she applied for open positions not only at Abercrombie, but also at FedEx and Starbucks. Stilp Decl. 2 Ex. B at 73-75. The interviews at FedEx and Starbucks took place before the interview at Abercrombie, and Ms. Banafa discontinued her job search after her Abercrombie interview. <u>Id.</u> at 171. The EEOC responds that Ms. Banafa applied to and was rejected from both the FedEx and Starbucks positions, and that Abercrombie has wholly failed to point to any substantially equivalent jobs that Ms. Banafa could have or should have pursued during her period of unemployment.

The court finds that Abercrombie has not met its burden to show the availability of substantially equivalent jobs. That Ms. Banafa had applied to and was rejected from two other jobs in the area prior to interviewing with Abercrombie does not sufficiently show that substantially equivalent jobs were available after Abercrombie declined to hire her. In <u>EEOC v. Farmer Bros.</u>, the Ninth Circuit upheld the district court's determination that the defendant had established the

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

availability of substantially equivalent jobs.  There, the defendant had submitted evidence revealing that several women who had been laid off at the same time as the plaintiff had quickly found substantially equivalent employment.  Additionally, the defendant had submitted data based upon a random statistical sample of 148 companies located near the plaintiff's residence that reflected the availability of substantially equivalent jobs.  While this level of effort may not always be required, here Abercrombie has not taken any steps to meet its burden.  Its reliance on Ms. Banafa's testimony about her prior efforts, without more, is insufficient to show the availability of substantially equivalent jobs.  Therefore the court GRANTS the EEOC's motion for summary judgment as to Abercrombie's Fourth Affirmative Defense.

### ii.  Abercrombie's Eighth Affirmative Defense: Undue Hardship

An employer facing a Title VII reasonable accommodation claim may avoid liability by showing it would face an undue hardship in providing a religious accommodation.  Peterson, 358 F.3d at 606.  Abercrombie highlights two types of undue hardship it would face in permitting Ms. Banafa to wear a hijab to work in violation of the Look Policy.  First, Abercrombie contends that allowing an exception of this sort to the Look Policy would disrupt its careful branding efforts, resulting in customer confusion, because of the critical role that the Look Policy plays in supporting its brand image.  Dkt. No. 95 at 12.  Second, Abercrombie argues that allowing exceptions to the Look Policy would hurt store performance.  Id.

The EEOC contends that Abercrombie's reliance on these stated harms, without more, renders Abercrombie's defense vulnerable to summary judgment.  Dkt. No. 97 at 4-5. Abercrombie does not offer any studies demonstrating a correlation between failure to comply with the Look Policy and either customer confusion or decreased sales.  Nor does it offer into evidence any of the store reports that linked poor sales performance with lack of adherence to the Look Policy.  Rather, Abercrombie offers only the seemingly speculative assertion on the part of its executives that the correlation exists.

Abercrombie responds that an employer need not demonstrate economic harm in order to prove undue hardship, nor measure that hardship "with exactitude."  Dkt. No. 95 at 17 (citing

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   Webb v. City of Philadelphia, 562 F.3d 256, 260 (3d Cir. 2009)).  While it is true that Abercrombie

2   need not prove "with exactitude" the harm it will suffer in accommodating Ms. Banafa's religious

3   need to wear a hijab at work, the law of this Circuit does require heightened proof of the hardship

4   alleged.  See, e.g., Heller v. EBB Auto, 8 F.3d 1433 (9th Cir. 1993); Tooley v. Martin-Marietta

5   Corp., 648 F.2d 1239, 1243 (9th Cir. 1981); Anderson v. General Dynamics, 589 F.2d 397 (9th Cir.

6   1978).  Hypothetical or merely conceivable hardships cannot support a claim of undue hardship.

7   Tooley, 648 F.2d at 1243.  Rather, undue hardship requires proof of actual imposition or

8   disruption.  Id. (citing to General Dynamics, 589 F.2d 397, 400, cert. denied 442 U.S. 921 (1979)).

9   Both the magnitude and the fact of hardship require an examination of the facts of the specific case.

10   Tooley, 648 F.2d at 1243.

11          Though several of Abercrombie's executives note some correlation, based on their personal

12   experience, among Look Policy compliance, store sales, and brand image, none have been able to

13   isolate its effects or the magnitude of such effects on store sales or brand image.  For instance, Mr.

14   Chmielewski, a "rehab team leader," noted a "dramatic" improvement in store "likes" as a result of

15   consistent training and development at the Stanford store, but testified that he is unable to say what

16   degree of influence improved compliance with the Look Policy may have on a store's performance.

17   Stilp Decl. 2 Ex. K at 60:25-61:9; Declaration of Marcia Mitchell ISO Pl. Reply ("Mitchell Decl.

18   2"), Dkt. No. 98, Ex. 6 at 199-201.  Similarly, Mr. Moorefield, Abercrombie's Director of Stores,

19   testified that an enormous number of variables are involved in evaluating store performance but

20   that one would be "guessing essentially" in determining if a correlation exists between any one

21   factor and a drop in sales.  Stilp Decl. 2 Ex. E at 208:6-17.  Further, Ms. Passalacqua, another

22   Abercrombie executive, confirmed that Abercrombie "[doesn't] look at" the financial impact of an

23   employee's failure to adhere to the Look Policy.  Stilp Decl. 2 Ex. I at 33:7-20.

24          Abercrombie's executives consider adherence to the Look Policy important and part of

25   their core strategy, yet they are unable to furnish any evidence outlining the degree to which Look

26   Policy compliance affects store performance or brand image.  This dearth of proof is in conflict

27   with Tooley's requirement that an employer raising an undue hardship defense prove not just the

28

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

fact of hardship, but also its magnitude—one that surpasses at least a <u>de minimus</u> level.  Based upon <u>Tooley</u>'s demand that proof of hardship rests upon actual imposition on or disruption of the employer's business, the court finds that Abercrombie's proffered evidence affords little basis upon which a reasonable jury could conclude that Abercrombie would be unduly burdened in permitting Ms. Banafa to wear a hijab at work.  Accordingly, the court GRANTS the EEOC's Motion for Summary Judgment as to Abercrombie's undue burden defense.

### iii.   Abercrombie's Tenth Affirmative Defense: First Amendment Right to Commercial Speech

As its Tenth Affirmative Defense, Abercrombie argues that enforcement of Title VII in this case would be unconstitutional because it would violate Abercrombie's First Amendment right to commercial speech.  Abercrombie's defense is premised on its unique marketing strategy of deploying its in-store personnel as living advertisements for its brand.  Forcing Abercrombie to grant a Look Policy accommodation to a Muslim in-store employee who wears a hijab for religious reasons would, according to Abercrombie, amount to the government's compelling it to advertise a fashion inconsistent with its "East Coast" and "preppy" style.  Dkt. No. 95 at 21; <u>See</u> Stilp Decl. 2 Ex. E at 95, 155.  The EEOC moves for summary judgment on Abercrombie's Tenth Affirmative Defense primarily on the basis that Title VII's purpose of eradicating discrimination is compelling enough and its means tailored enough to satisfy any level of scrutiny the court may choose to apply.

The court need not reach the novel First Amendment issues posed by Abercrombie's defense and the parties' arguments because the foundation of this defense is fatally flawed.  In focusing their argument on the appropriate level of scrutiny to apply to Abercrombie's living commercial speech, the parties have ignored a threshold issue—namely, whether Abercrombie's control of its PTIs' appearances is commercial speech at all.  The court concludes that it is not.

Commercial speech is entitled to constitutional protection, albeit a lesser degree of protection than is afforded to other forms of speech.  <u>See</u> <u>Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York</u>, 447 U.S. 557, 562-63 (1980).  As a natural consequence of

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    this decreased protection, litigants frequently dispute whether the speech at issue in their cases

2    should be considered commercial speech, or rather, speech fully protected by the First Amendment.

3    To that end, the Supreme Court in <u>Bolger v. Youngs Drug Products Corp.</u> devised a test to assist

4    courts in determining what constitutes commercial, rather than "fully protected" speech.  463 U.S.

5    60, 65 (1983).  The <u>Bolger</u> test teaches that "'strong support' for characterizing the speech at issue

6    as commercial can be found where the speech is an advertisement, the speech refers to a particular

7    product, and the speaker has an economic motivation.  <u>Id.</u> at 66-67.

8            Here, the parties largely assume <u>arguendo</u> that PTIs' appearances constitute an

9    advertisement sufficient to constitute commercial speech.[1]  Their arguments thus focus on whether

10   a Title VII accommodation to the Look Policy constitutes compelled or restrained speech, and the

11   corresponding tier of scrutiny that should apply.  However, after a review of the briefs and the

12   record the court has determined that Abercrombie's own evidence belies its argument that PTIs'

13   appearances should be considered advertising.

14           Mr. Riley, an Abercrombie vice-president, testified during his deposition that

15   Abercrombie's "largest" form of advertising is its "in-store experience with [its] models, the look

16   and feel of the store, what the customer has come to expect."  Stilp Decl. 2 Ex. C at 19:3-5.

17   Similarly, Mr. Moorefield confirmed that "the model position is our advertising for our company."

18   Stilp Decl. 2 Ex. E at 138:14-15.  In keeping with this strategy, the "main part" of the model's, <u>i.e.</u>

19   the sales associate's, job is to advertise Abercrombie's clothing.  <u>Id.</u> at 100:2-5.  The Look Policy

20   is "a core piece" of Abercrombie's advertising because "models and managers are expected to be in

21   [Abercrombie's] style, and this is one of [Abercrombie's] main ways a customer gets to see

22   [Abercrombie's] style."  Stilp Decl. 2 Ex. C at 31:19-24.  Similarly, Abercrombie's 10-K filed with

23   the Securities and Exchange Commission explains that its "sales associates…reinforce the

24   aspirational lifestyles represented by the brand," and that its "sales associates[] and managers are a

---

[1] The EEOC does argue that Abercrombie's control of its PTIs' appearances is not "speech," but does so relying on the test for expressive or symbolic conduct.  That test is not applicable here, where the alleged speech at issue is of a commercial nature.  The <u>Bolger</u> test is sufficiently flexible to encompass commercial speech in forms other than words, and thus is more appropriate under these circumstances.

24

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

central element in creating the atmosphere of the stores." Dkt. No. 95 at 19.   To that end, model candidates are evaluated on their looks during the interview process, and, after hire, are expected to comply with the Look Policy. See id. at 63:10-13, 72:17-19.

Candidates for the PTI position are also evaluated on their appearance and expected to comply with the Look Policy.  See Stilp Decl. 2 Ex. E at 94:7-13; Ex. C. at 161:12-14.  Though appearance is a factor in the interview process, and adherence to the Look Policy a condition of employment, PTIs' job responsibilities do not actually include serving as living advertisements. According to Mr. Moorefield, PTIs mainly "process shipment and fill the sales floor."  Stilp Decl. 2 Ex. E at 34:20-21.   Additionally, PTIs "help with updates, which is when [Abercrombie] get[s] new merchandise into the store[,] and help place it on the floor.  When shipment got [sic] excessive during back-to-school or Christmas seasons, they would also help out in the stockroom…."  Id. at 52:4-10.  When asked if PTIs performed any other job duties other than those he had just listed, Mr. Moorefield responded "no."  Id. at 52:12-13.  This testimony makes clear that, unlike models, PTIs' job responsibilities do not include serving as living advertising for the Abercrombie brand. As a result, PTIs' appearances simply do not constitute "advertisements."

While the Bolger test is typically used to determine whether speech merits either complete First Amendment or only limited commercial speech protection, here the test suggests that Abercrombie's control of its PTIs' appearances is not "speech" at all.   Under Bolger, commercial speech is defined in part by its form: advertisement.  Abercrombie contends that its PTIs' appearances are advertisements, but does not argue that their appearances constitute speech of any other form—i.e. it does not argue that their appearances are imbued with some other element warranting full protection under the First Amendment.  Unable to prove that PTIs' appearances are in fact advertisements, Abercrombie has failed to show the first prong of the Bolger test.   If not advertisements, the PTIs' appearances plainly do not take on the form of any other protected speech.

The appropriateness of requiring an accommodation to the Look Policy in this case remains a question of employment law, for Abercrombie cannot achieve an end-run around Title VII by

25

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

elevating the appearance of its stock room employees to protected commercial speech.  The court leaves to another day the more difficult question of whether a living model, whose stated job responsibility is to advertise Abercrombie's brand, constitutes commercial speech.   The EEOC's Motion for Summary Judgment as to Abercrombie's Tenth Affirmative Defense is therefore GRANTED.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS the EEOC's Motion for Partial Summary Judgment and DENIES Abercrombie's Motion for Summary Judgment.  Additionally, the court DISMISSES Abercrombie's Fifth and Sixth Affirmative Defenses.

The court hereby sets a Preliminary Pretrial Conference at 11:00 AM on May 17, 2013. The parties shall submit their Joint Preliminary Pretrial Conference Statement no later than May 7, 2013.

**IT IS SO ORDERED**

Dated: April 9, 2013

_____
EDWARD J. DAVILA
United States District Judge

United States District Court
For the Northern District of California

Case No.: 5:10-CV-3911-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT